246 So.2d 258 (1971)
Travis FREEMAN, Plaintiff-Appellee,
v.
STANDARD MATERIALS, INC., et al., Defendants-Appellants.
No. 8256.
Court of Appeal of Louisiana, First Circuit.
March 15, 1971.
Rehearing Denied April 19, 1971.
Writ Refused June 2, 1971.
Wood Brown, III, of Montgomery, Barnett, Brown & Read, New Orleans, for defendants-appellants.
France Watts, III, of Watts & Watts, Franklinton, for plaintiff-appellee.
Before LOTTINGER, SARTAIN and TUCKER, JJ.
Rehearing En Banc Denied April 19, 1971.
SARTAIN, Judge.
This is a workmen's compensation action in which the plaintiff Freeman alleged that he was totally and permanently disabled as the result of a back injury received when the truck he was driving ran off the side of a highway. It was stipulated that the accident did occur on November 28, 1966, and that plaintiff was then in the course and scope of his employment with Standard Materials, Inc. It is also undisputed that Freeman sustained an injury to his left leg in the accident and that he received $95.00 for medical expenses and $682.52 in weekly workmen's compensation payments, for total and temporary disability covering a period of nineteen weeks and three days, from Phoenix Assurance Company of New York, the insurer of Standard Materials, Inc., and also a defendant herein. The *259 contested issue is whether Freeman also sustained a back injury as a result of the same accident.
After the trial on the merits, the judge gave the following reasons for judgment:
"This is a workmen's compensation case involving a back injury, and as is always the case, the medical testimony is in such conflict that it is like flipping a coin.
"The law says that the doubts should be resolved in favor of a plaintiff in a workmen's compensation suit and I can't overlook the testimony of Dr. Edward Attix as well as the lay testimony. I am aware of the negative findings of the experts that saw the plaintiff on behalf of the defendant.
"However, it is my conclusion that the plaintiff has proved the case by a preponderance of the evidence and I will sign a Judgment for total and permanent benefits, subject to a credit for what has been previously paid."
The defendants have appealed contending that the trial judge erred in concluding that the medical testimony was in substantial conflict and therefore further erred in according significant weight to the testimony of lay witneses. As a result of that reasoning and by taking the position that all doubts in a workmen's compensation case should be resolved in favor of the claimant, it is urged that the trial judge erred in concluding that plaintiff Freeman proved his case by a preponderance of the evidence. Our review of the record and applicable law reveals ample support for these contentions and for reasons hereinafter stated, we reverse the judgment of the lower court.
No treating physician or other medical expert testified at the trial. Four depositions of examining physicians were introduced and another medical report, requested on interrogatories, had previously been made a part of the record. Under these circumstances, the usual rule that the trial judge was in a better position to evaluate the credibility of these witnesses than we are now is not applicable. Our reading of these depositions and report do not present any substantial conflict between the doctors. There is, however, considerable conflict between the testimony of the doctors as to their findings and the testimony of the plaintiff and his lay witnesses as to the onset, persistence and severity of the back pains on which the claim for total and permanent disability is based.
The testimony of the plaintiff, supported by that of his wife, father and aunt, is that he suffered severe pain and numbness in his left leg and pain in his lower back immediately following the accident and that he had never had such pains before. From that day forward he experienced much pain and difficulty in standing erect, bending and he limped when walking. The pain was constant, day and night, and progressively worsened. On numerous occasions he had fallen from his steps into the yard. Freeman stated that he complained of his back on every visit to Dr. Louis Polizzi, a general practitioner who treated him many times between the date of the accident, November 28, 1966, and the last such visit on March 6, 1967. He tried to find work of a light nature several weeks after the accident and did work at a service station for a couple of weeks but was dismissed because he could not do some lifting and other tasks required by the job. Freeman said he contacted an attorney around February, 1967, apparently because he was dissatisfied either with the defendant's refusal to rehire him or with compensation payments from the insurer, which he claimed were irregular or sporadic. No immediate legal action was taken and he saw at least four other doctors between February 21, 1967, and January 30, 1968. On this latter date, Dr. Edward Attix, an orthopedic specialist, found evidence by means of an X-ray of a slight narrowing of a lumbosacral disc and was of the opinion that Freeman was suffering from pressure on the sciatic nerve root. This diagnosis was compatible with the tenderness and moderate muscle spasm found in the lumbosacral or lower back area.
*260 The issue, therefore, is whether plaintiff proved the causal relationship between the accident on November 28, 1966, and the condition diagnosed by Dr. Attix on January 30, 1968.
Dr. Louis Polizzi, a general practitioner, said that he treated Freeman from the date of the accident until March 6, 1967, but that Freeman never mentioned back pain until the last visit. He was examined and treated many times during those three months for the injury to his left calf and leg and Dr. Polizzi said he never had any reason to examine Freeman's back. Even on March 6, relative to the back pain complaint, Dr. Polizzi said, "I was not impressed that there was any significant injury." Because of renewed complications of the left leg and calf, however, Dr. Polizzi had referred Freeman to Dr. H. R. Soboloff, an orthopedist.
Dr. Soboloff saw Freeman twice, on February 21 and April 24, 1967. He testified as to the history given him by Freeman during the first visit. Freeman told him that he had hurt his head, neck and left leg in the accident and had been treated for his left leg by Dr. Polizzi for about five weeks. He then tried to work in a service station but could not hold the job because of his leg pain. During that time he also experienced back pain and still had occasional back pain. Dr. Soboloff's examination revealed a normal range of back movement with no spasm or tightness and he took an X-ray, which was negative. The only complaints of pain were in the left knee and calf. There was no finding in the back, either clinically or radiologically, and no apparent basis for complaint.
At the second visit, on April 24, Freeman told Dr. Soboloff that he had received more treatment for both his knee and his back and that he had no more complaints about his knee but was primarily concerned with his back. The pain did not come and go but seemed to get worse, especially when he was too active. Again the examination revealed a full range of back motion but Freeman complained of pain in the last twenty-five degrees of bending forward. Leg raise tests from a sitting position were negative but from a supine position there was complaint of pain. All tests from a prone position were negative, but pressure on the lower back brought a complaint of soreness in the sacral area. Dr. Soboloff again made no objective findings but thought a neurological evaluation would be in order to rule in or rule out any nerve root pressure. As of April 24, 1967, there was no evidence of disability or residuals from an orthopedic standpoint. It was Dr. Soboloff's opinion that a negative myelogram thereafter would substantiate that finding, at least to the extent that a ruptured disc or direct penetration of the sciatic nerve would be ruled out. Even in the case of pressure on the nerve or some sort of internal contusion, such an injury probably would have manifested itself within a few days of the external trauma, in this case the truck accident, and certainly within three or five months thereafter when Dr. Soboloff made his examinations. However, he admitted that if there were only some nerve irritation, or slight pressure the symptoms could be intermittent for a few months and might not appear on a myelogram. Because of this possibility. Freeman was referred to Dr. Richard W. Levy, a neurosurgeon.
Dr. Levy saw Freeman three times, on May 23, October 11, and December 9, 1967. On the first visit, Freeman complained of pain in the lower back and radiating into both legs, especially the left. He did not indicate when the back pain had started. He walked with a limp and with his body bent forward. He had a more restricted range of back movement, soreness upon pressure in the lumbosacral area and numbness to pin-prick in his legs. But his lumbar curve was normal, hip bones equal in height, and muscle power and reflexes in both legs were normal. X-rays of the lumbar spine were negative and, having found no objective mechanical low back signs nor any evidence of nerve root compression, Dr. Levy concluded that Freeman did not have any neurological disability to account for *261 his symptoms. The general numbness in both legs "could not result from organic neurological involvement" in the presence of normal reflexes, normal strength and no atrophy.
On October 11, Freeman's subjective complaints were greater than before and he would neither stand erect nor bend forward, backward or to either side. Again the muscle power and reflexes were normal in both legs, but both legs were completely numb to pin-prick. Dr. Levy said there was no objective evidence of nerve root compression in either leg and that "the total loss of feeling . . . can't be explained by any known organic neurological involvement, spinal cord, nerve root or peripheral nerve". He did think that a lumbar myelogram should be carried out to test for a possible ruptured intervertebral disc. At that time he had also reviewed the report of Dr. Byron Unkauf, dated September 22, 1967, which indicated a possible mild protrusion of the lower lumbar disc, although X-rays had proved negative and there was no apparent narrowing of any of the intervertebral disc spaces.
On December 9, 1967, Dr. Levy performed the myelogram and both he and the radiologist agreed that it was normal, excluding a reptured or protruding disc. He admitted that a myelogram would not necessarily reflect the presence of sciatica or sciatic nerve root problem, if the cause were a spinal cord tumor or inflammation or neuritis of virus or other origin, but it did rule out a severe disc problem. He did say that if Freeman's stooped posture had been due to sciatica, his leg raise tests would have been limited but that they were normal at all times. He did not think sciatica could be caused by trauma only to the skin. He thought that traumatic injury to the back, as in the truck accident, should manifest itself within a few days. He also said that pain from sciatica and muscle spasms could be intermittent.
Lastly, there is the testimony of Dr. Attix, the orthopedist who saw Freeman on January 30 and March 7, 1968. At the first visit, he found some tenderness in the lumbosacral area of his back and moderate muscle spasm on both sides. X-rays showed slight narrowing of the lumbosacral disc space, which Dr. Attix did not feel was in itself diagnostic but which, combined with pain the lumbar spine during movement, showed evidence of pressure on the sciatic nerve root. He felt Freeman should be placed in pelvic traction and a back brace. His findings and recommendations on the second visit were essentially the same. Dr. Attix said he was not seriously contemplating surgery and that Freeman should be expected to respond to conservative treatment and wind up with possibly a 5% disability or physical impairment for his whole body. Dr. Attix did not feel that the symptoms and signs were so severe as to preclude Freeman's return, after treatment, to driving a truck. He was asked why other doctors who had examined Freeman during the year following the accident might not have made any objective findings of nerve root compression, clinically or by X-ray or myelogram. He answered, in substance, that the injury might be missed if the nerve root compression were not severe or when the patient is in a slight remission or if the symptoms were intermittent. Otherwise, he said it would certainly seem likely that an orthopedist would make objective findings three or five months after the accident.
In summary, several doctors took X-rays of Freeman's back but Dr. Attix was the first to find a narrowing disc space. Evidence of nerve root pressure should have manifested itself within days of the accident, but might not always appear thereafter if it was not severe or if there were times of intermittent remission. We do not find any substantial disagreement between the doctors in any crucial respect.
But plaintiff Freeman and his lay witnesses said he was continuously plagued with severe back pain from the date of the accident and that the pain steadily grew worse. He made no mention of remission *262 or "good days" at any time. The theory that he may not have exhibited symptoms to one physician or another several months after the accident because of the remittent nature of the injury is not consistent with plaintiff's own testimony.
Although certain rules and procedures are construed liberally in favor of a claimant in a workmen's compensation action and his testimony may be entitled to more weight on some issues than is normally the case, it must be supported and corroborated by the surrounding facts and circumstances. Blair v. Procon, Inc., 188 So.2d 676 (2nd La.App., 1966), writs refused, 249 La. 748, 190 So.2d 911 (1966); Mamon v. Western Waterproofing Company, Inc., 243 So.2d 105 (1st La.App., 1970). The burden of proof by a preponderance of evidence is not relaxed in his favor and remain the same as it is in other civil cases. Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1 (1963). This burden of proof clearly includes the element of causation.
A workmen's compensation claimant does enjoy a presumption that the accident caused the injury where, commencing with the accident, the symptoms appear and continuously manifest themselves thereafter, provided that such is consistent with the medical testimony. Bourque v. Monte Christo Drilling Corporation, 221 So.2d 604 (3d La.App., 1969). In the instant case, Dr. Soboloff first heard a complaint of back pain on February 21, 1967, and was told by plaintiff that he first noticed it while working at the service station some weeks after the accident. Dr. Polizzi said no complaint was made to him until March 6, 1967. No doctor could find an objective reason for the subjective complaints of back pain until Dr. Attix did on January 30, 1968. We therefore are of the opinion that Freeman is not entitled to the presumption discussed in the Borque case, supra, and has not otherwise proved a causal relationship between the accident of November 28, 1966, and the sciatic nerve root compression diagnosed on January 30, 1968.
For the above and foregoing reasons the judgment of the lower court awarding plaintiff total and permanent compensation benefits is reversed and judgment is hereby rendered dismissing the claims of plaintiff-appellee against both Standard Materials, Inc., and Phoenix Assurance Company of New York at plaintiff-appellee's costs.
Reversed and rendered.