322 So.2d 872 (1975)
Mathew ALFRED, Plaintiff-Appellee,
v.
The TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
No. 5220.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1975.
Rehearing Denied December 17, 1975.
*873 Dubuisson, Brinkhaus, Guglielmo & Dauzat by Jimmy L. Dauzat, Opelousas, for defendant-appellant.
Tate & Tate by Donald J. Tate, Mamou, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX and PAVY, JJ.
PAVY, Judge.
This compensation claim involves the question of causal connexity between a knee laceration on July 29, 1972 (when plaintiff was employed by defendant's insured, Pensacola Construction Company) and a back injury on June 13, 1973 (when plaintiff was employed by Evangeline Gas Company).
In the second accident, plaintiff sustained a ruptured intervertebral disc with consequent total and permanent disability and has been continually receiving compensation benefits of $45.00 a week from the insurer of Evangeline Gas Company. This suit is solely against Travelers Insurance Company, insurer of Pensacola, and seeks to hold it liable at $49.00 per week in order to achieve the higher rate and have the additional security of another debtor. Plaintiff concedes it is not entitled to double recovery and that some credit would be effected between the two compensation carriers for payments during the overlapping period subsequent to the second accident.
It is plaintiff's contention that the laceration left his knee in a weakened and unstable *874 condition, and although not disabling in itself, the instability contributed to the subsequent back disability because the back injury occurred in a fall occasioned by his knee weakening or giving way. We pretermit whether the back injury and consequent disability is within the range of compensable consequences with regard to the original laceration. Defendant contends that there is no causal connexity between the laceration and the later fall. The trial court gave an award for permanent and total disability at $49.00 per week commencing from the date of the first accident and subject to credits for payments by defendant and the other compensation carrier. Defendant has appealed.
Plaintiff was paid compensation benefits for the first injury until August 23, 1972. He had returned to work with his same employer on a light-duty basis for about two weeks until that job played out. In the fall, he worked for approximately a month as a farm laborer and in October went to work for Evangeline Gas Company and continued at that employment until injured in June 1973. In all these situations, plaintiff was employed as a common laborer.
Dr. Shapiro sutured plaintiff's laceration immediately following the injury, was not further involved in treatment, had moved out of the state and did not appear as a witness.
Dr. Joseph Lee removed the sutures about a week later and discharged plaintiff on August 23, 1972, as fully recovered. At that last visit, plaintiff still had complaints of pain and the doctor prescribed a painkiller. He could find nothing in the X-rays or on physical examination to indicate any remaining effects of the laceration. He expressed the possibility of "a little residual arthritis or joint inflammation compatible with the injury and his age". He found no instability of the knee in any way and stated that any severe cartilage injury would be obvious in examination or flexion of the knee. This doctor did not see or treat plaintiff subsequent to the August 23 discharge and his statements pertain solely to that time.
Dr. Jerome Ambrister, an orthopaedist, evaluated plaintiff at defendant's request on May 18, 1973, within a month of the second accident. Plaintiff complained to him of inability to kneel without pain, swelling, breaking veins, discoloration and a weak, unstable sensation in the knee. The doctor described the laceration scar as located on the medial side of the right patella, being in the form of a right angle and measuring one-half inch on one line and one and one-half inches on the other line. The doctor found no discoloration, swelling or any observable conditions indicative of a venous or circulatory problem. All X-rays were negative. He put plaintiff through various tests to determine any possible instability of the knee itself or any of the ligaments involved. All the tests were negative and he stated:
"A. Now, this man did have this among the symptoms that he presented in the history, instability of this knee or a sensation of instability. A weak, unstable sensation of the right knee, he described it. Now, the array of tests that I carried out, I could find no reason for the instability or, of course, I would have found the man as having some disability or some reason for his symptoms. In other words, I could find no ligamentous instability. I found nothing to indicate that there was a loose body within his knee joint that would cause locking and cause him to be unstable, to fall. Now, his musculature, frequently if you injure a lower extremity and it is tied up or favored over a long period of time, the musculature becomes weak, especially in the quadriceps muscle as related to the thigh. This quadriceps muscle will give you instability of the knee. However, as I think I have previously testified, that this man's right thigh was larger than his left. His right was his injured side, and he was righthanded.

*875 This is the usual combination that you would expect to find under normal conditions."
At another point, his testimony was as follows:
"Q. Now, is there such a thing as increased use of a muscle in a member of the body resulting from some injury and resulting, therefore, in a finding not of atrophy but of actualwould it be hyperdevelopment of that particular muscle? And in order that you may understand my question more fully, let me ask you, is it possible that a man might walkthat a man who injured his right knee might walk in such a fashion that actually he would use the quadriceps muscle more than he would if he had not injured his right knee and was not protecting his right knee?
A. Not that I have ever encountered in practice. The best test actually as to how much an individual is favoring a knee is by measurement of the quadriceps muscle, because it wastes away in a hurry if it is not subjected to use in the usual manner."
On August 2, 1973, after the second accident, Dr. Frank Davis, Jr., a cardiovascular surgeon, examined plaintiff at the request of his own counsel. He related plaintiff's complaints of pain and swelling but observed no swelling at the time and prescribed an elastic stocking on the strength of plaintiff's complaints of swelling. He emphatically ruled out any instability or weakness of the knee as a result of any deep-vein thrombosis or other circulatory problem.
Dr. Luke Bordelon, an orthopaedist, treated plaintiff for his back condition including removal of the affected disc. His deposition is in evidence. He did not examine plaintiff's knee and his testimony is significant only for the history or description of the second accident given to him and his nurse by plaintiff.
Plaintiff was seen by two other doctors subsequent to the back injury but these did not testify.
Besides plaintiff himself, the witnesses were his wife and Mr. E. L. Ardoin, plaintiff's foreman with Evangeline Gas Company, who testified that plaintiff had trouble to walk and who corroborated plaintiff's complaint about the back injury on the same day. Plaintiff's wife also testified regarding pain and swelling. She gave no statement regarding instability of the knee as such and stated that she had reduced the swelling with hot packs.
In his opinion, the trial judge, stated:
"In this case, plaintiff's own testimony that he fell because of the instability of the knee arising from its chronic weakness and instability is clear and convincing. Although the medical evidence describing the condition of the knee is not sufficient to establish a case of total and permanent disability for plaintiff on that point alone, it is not inconsistent and incompatible with plaintiff's continuing complaint of weakness and instability. Furthermore, the testimony of a disinterested supervisor, E. L. Ardoin, fully supports plaintiff's claim that the condition of his knee caused him to limp and walk with difficulty on the Evangeline Gas Company job. Moreover, the fall resulting from the weakened knee and causing the back injuries was promptly reported, and compensation benefits are being paid by that employer. (Plaintiff concedes that the present defendant is entitled to credit for any benefits paid by the other employer).
Thus the totality of the evidence, considered as a whole, amounts to an overwhelming preponderance that plaintiff's back injury is disabling; that it was caused by the fall of June 13, 1973; that the fall was caused by the weak and unstable condition of the knee injured on July 29, 1972; and that the back injury is well within the recognized range of *876 compensable consequences shown in the authorities plaintiff has cited."
We think the trial judge erred in overlooking the total effect of the medical testimony in relation to the weak lay testimony.
The jurisprudence is well settled that a plaintiff in a workmen's compensation case carries the burden of proof as in other civil cases and is required to establish his claim to a legal certainty and by a reasonable preponderance of the evidence. The testimony of the plaintiff alone in a workmen's compensation case may be sufficient to prove the occurrence of an accident if it is plausible and consistent and is supported by other circumstances appearing from the record. Where plaintiff's testimony is relied upon as a sole finding for establishing his claim, such testimony must be clear and convincing. See Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1 (La.1963); Dodd v. Liberty Mutual Insurance Company, 269 So.2d 304 (La.App. 3rd Cir. 1972); Card v. Southern Builders, Inc., 117 So.2d 675 (La.App. 2nd Cir. 1960); Waters v. L. L. Brewton Lumber Company, La.App., 120 So.2d 842 (2nd Cir. 1960); Jones v. Sturgis-Nix Lumber Company, La.App., 136 So.2d 307 (2nd Cir. 1961); Sneed v. Lumbermen's Mutual Casualty Company, La.App., 126 So.2d 421 (2nd Cir. 1960).
In Freeman v. Standard Materials, Inc., La.App., 246 So.2d 258 (1st Cir. 1971) it was stated:
"Although certain rules and procedures are construed liberally in favor of a claimant in a workmen's compensation action and his testimony may be entitled to more weight on some issues than is normally the case, it must be supported and corroborated by the surrounding facts and circumstances.
The burden of proof by a preponderance of evidence is not relaxed in his favor and remains the same as it is in other civil cases. . . . This burden of proof clearly includes the element of causation."
On the issue of whether there was in fact instability of the knee, plaintiff's wife did not testify as to such. Plaintiff's testimony and that of his foreman, alone among his co-employees, was the only evidence of instability. The foreman testified that plaintiff had "trouble to walk". We do not think such evidence is sufficient in the face of the orthopaedists' failure to find anything in the knee which would support weakness or instability and, more importantly, the orthopaedists' finding that there was no atrophy of the right leg muscles.
On the question of whether the back injury fall was in fact caused by the knee giving way, there is a complete absence of corroboration. Plaintiff did complain to Mr. Ardoin about injuring his back by a fall. The issue is not whether the fall was corroborated; it is whether there was corroboration that the instability caused the fall. In this connection, it should be noted that plaintiff stated from the stand that his "knee kind of give up and I stumbled and fall, you know, tripped". Mr. Ardoin testified that plaintiff told him that he "slipped or slide or slipped down and he fall".
In relating the back injury accident to Dr. Bordelon, plaintiff did not mention the knee at all and simply stated that he "came to fall". In describing the same accident to Dr. Bordelon's nurse, plaintiff stated that he was walking and "he stumbledhe tried not to fall, he twisted his back, he felt a burning pain".
We conclude that the lay testimony as to instability of the knee was too weak and scant to overcome the medical testimony and that there was no corroboration that any knee weakening caused the fall and disabling back condition.
*877 For the reasons assigned, the decision of the district court is reversed and set aside. All costs of these proceedings are to be paid by plaintiff-appellee. Reversed.
Reversed.