345 So.2d 1200 (1977)
Yvonne Ward STOKES
v.
CONTINENTAL INSURANCE COMPANY and Stupp Corporation.
No. 11255.
Court of Appeal of Louisiana, First Circuit.
May 9, 1977.
Arthur Cobb, Baton Rouge, of counsel, for plaintiff Yvonne Ward Stokes appellant.
Peter T. Dazzio, Baton Rouge, of counsel, for defendant Continental Ins. Co. and Stupp Corp. appellee.
Before LANDRY, EDWARDS and COLE, JJ.
*1201 LANDRY, Judge.
Plaintiff (Appellant), whose left arm was seriously injured in the course of her employment as computer operator by defendant Stupp Corporation, appeals from judgment awarding her minimum workmen's compensation for 200 weeks (for impairment of a physical function), and rejecting her demands for alleged total permanent disability benefits, penalties and attorney's fees. We affirm.
This appeal presents two issues. First, whether Appellant is entitled to compensation benefits for total permanent disability. Second, whether Appellant is entitled to penalties and attorney's fees because of defendants' alleged arbitrary and capricious discontinuance of compensation payments.
The following pertinent facts are either stipulated or conclusively established in the record. Appellant was injured during the course and within the scope of her employment when she fell into a deep pit or hole while assisting in the taking of an inventory. As a computer operator, Appellant was paid a salary of $550.00 per month for a normal 40 hour work week, which amounted to a wage of $3.17 per hour. The accident occurred February 1, 1975. Appellant was paid compensation at the rate of $65.00 weekly until she resumed work for Stupp in mid-March, 1975. By the end of March, Appellant was working full time. Appellant continued to work for Stupp as a computer operator until May 27, 1975, when she resigned, allegedly because while working, she was unable to perform hourly exercises recommended by her physician to strengthen her injured arm. On or about June 4, 1975, Appellant obtained employment as a secretary with another firm for whom she worked in this capacity until September 30, 1975. During this latter employment, Appellant earned more than she did while employed by Stupp. On September 30, 1975, Appellant underwent corrective surgery on her arm. At this time, defendants resumed compensation payments, which were still being paid at the time of trial on January 15, 1976. As of the date of trial, Appellant was paid $1,560.00 in compensation.
The trial court found that Appellant suffered a 13% permanent disability of the left arm. On this basis, he awarded Appellant minimum compensation of $17.50 weekly for 200 weeks, or a total of $3,500.00, from which he deducted compensation paid, and rendered judgment for Appellant in the sum of $1,940.00.
As computer operator, Appellant's duties consisted primarily of operating an L-shaped console device from a seated position. With her right hand she operated a typewriter and a standard 10-key key pad, the precise nature of which is not clear from the record. With her left hand she dropped cards into the computer. She was also required to pull files and insert tapes into the computer. The position required a considerable degree of manual dexterity coordinated with thought processes.
On the day of the accident, Appellant was seen by Dr. Kenneth C. Cranor, who diagnosed Appellant's injury as an open and comminuted fracture of the proximal portion of the left ulnar shaft, below but sufficiently near the elbow to affect that joint. Dr. Cranor inserted a plate, secured by four screws to stabilize the fracture, which proved to be slow in forming a union. Following this initial surgery, Dr. Cranor saw Appellant on numerous occasions. The fracture continued to knit slowly. Motion in Appellant's arm was restricted to what Dr. Cranor considered an unsatisfactory degree, which caused Dr. Cranor to remove the plate on September 30, 1975, because he felt the plate was contributing to the restriction. At trial, Dr. Cranor noted that Appellant possessed complete pronation in her left hand, meaning she could turn her palm downward in a normal manner. He found, however, that Appellant has a complete lack of supination in her left hand, meaning she can turn her palm upward only to the neutral position, which is thumb pointing up. Dr. Cranor rated Appellant's condition as a 13% permanent restriction of use of her left upper arm. He expressed the view that surgery could reduce this disability to a rating of 0 to 5% impairment. Dr. Cranor was of the opinion that Appellant *1202 could drop cards into a machine with her left hand, and that she could perform secretarial work and similar duties with some modification of movement.
Appellant testified she returned to work for Stupp due to economic pressure. She was given some help while on the job, but never could fully perform her duties. She left Stupp in May, 1975, because she could not take time out while working to perform hourly exercises recommended by Dr. Cranor to strengthen her arm. After leaving Stupp, she accepted a secretarial position because she needed the extra money. She stated she could perform secretarial duties with some inconvenience, and she could retain this other employment because she discontinued the recommended exercises when she realized they were not producing beneficial results. In essence, she stated she now lacks the manual dexterity required of a computer operator.
While employed by Stupp, Appellant's immediate supervisor was Terrence W. Doud, Jr. Mr. Doud testified in effect that when Appellant returned to work following her injury, Appellant appeared to perform all the duties of a computer operator without difficulty. He noted no appreciable difference between her performance after the accident than before.
Howard J. LaBauve, Jr., Comptroller, Stupp Corporation, testified he was head of the department in which Appellant worked. He stated he had somewhat limited supervision of Appellant, but that he did frequently see her at work after the accident. He noted no difference in her working ability after the injury.
Whether an injured employee is totally and permanently disabled is a matter of fact.
Plaintiff in a suit for workmen's compensation benefits bears the burden of proving the essential elements of his claim by a preponderance of evidence, the same as a plaintiff in any other civil action. Alfred v. Travelers Insurance Company, 322 So.2d 872 (La.App. 3rd Cir. 1975); Freeman v. Standard Materials, Inc., 246 So.2d 258 (La.App. 1st Cir. 1971).
The trial court resolved the disability issue in favor of defendants. It is well settled that the findings of a trial court on factual issues are entitled to great weight and are not to be disturbed except on a showing of manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973). We find no manifest error in this instance. On the contrary, we are in agreement with the conclusion of the trial court.
Concerning Appellant's claim for penalties and attorney's fees, we note that on April 14, 1975, Dr. Cranor issued a report narrating his treatment of Appellant's injury and her progress as of that date. He was then of the view that Appellant might have some permanent restriction of motion in her left arm but that, nevertheless, she should be able to resume almost any type of employment in about 4 months. In a report dated May 26, 1975, Dr. Cranor indicated he felt Appellant's condition was essentially the same, but that he was considering removing the plate in about 4 months, after further improvement in the fusion of the fracture. He again expressed the view that Appellant could then engage in secretarial and other similar duties, although some such activities might require modification of movement due to continued limitation of supination of Appellant's left forearm. On July 15, 1975, Dr. Cranor rendered a report in which he noted continuation of the limitation of supination, and again indicated he felt it best to remove the plate as soon as fusion of the fracture allowed.
We find no error in the trial court's denial of penalties and attorney's fees, which can be awarded only when discontinuance of payments is found to be arbitrary, unreasonable or capricious. Appellant left her employment with Stupp and accepted similar work with another concern, where she remained employed until she was laid off due to a reduction in force. As of the date of Appellant's second operation in September, 1975, Dr. Cranor's reports contained no indication that Appellant was suffering from a 13% permanent restriction *1203 of movement of her left upper arm, or that Appellant was unable to resume her former employment. Conversely, the reports indicated that Appellant should be able to resume the duties of computer operator. It is significant that when Appellant underwent surgery for removal of the plate, defendants resumed compensation payments and continued to pay to the date of trial. In view of Dr. Cranor's reports, which is all the medical evidence defendants had, and the fact that Appellant left Stupp for similar employment with another firm, we find that discontinuance of compensation payments was neither arbitrary, unreasonable nor capricious, as did the trial court.
The judgment is affirmed at Appellant's cost.
AFFIRMED.