LOTTINGER, Judge.
This is a workmen’s compensation suit filed by Judy Braddy against Triangle Timber, Inc. (Triangle) and Harmon Hyde. From a judgment in favor of plaintiff and against Triangle Timber, Inc. awarding compensation at the rate of $65.00 per week *312 for 500 weeks, subject to a credit of $1,015.00, both defendants have appealed [1]
Plaintiff worked with her husband in an independent timber operation. They cut and transported timber owned by a Harmon Hyde, who in turn sold this timber to the defendant. On or about March 28, 1974, plaintiff, while working with her husband, slipped off the running board of their truck and hurt her left foot. Plaintiff notified Hyde of her accident, and he in turn notified Triangle.
Plaintiff was initially seen by Dr. Reginald Goldsby, a general practitioner, who initially treated the plaintiff conservatively by placing her foot in a cast for about five or six weeks. After the removal of the cast, Mrs. Braddy continued to complain of pain at which time Dr. Goldsby recommended that she consult Dr. Kenneth Cra-nor, an orthopedic surgeon. Dr. Cranor first saw Mrs. Braddy on July 19, 1974, at which time she was still complaining of pain in her left foot. After x-ray examination he diagnosed that she had an accessory tarsal navícula which had been made symptomatic by the sprain type injury she had sustained, and concluded that if a prescribed arch support as well as medicine did not control her symptoms, eventual surgery would be needed to remove the accessory navieula. She returned on July 30, with persistent pain, and surgery was performed on August 5 for the removal of the extra bone in her ankle. She was discharged from the hospital on August 7 and continued to see Dr. Cranor throughout September showing steady improvement to her foot. After an examination of the plaintiff on October 18, Dr. Cranor reported that she was released to return to her former employment at that time, though the mild amount of discomfort that she was then feeling on activity was expected to clear completely, and he did not anticipate any permanent anatomical physical impairment as a result of the accident. The doctor felt that the best treatment for her foot at this time was to exercise it by doing her regular activities.
In November of 1974 the plaintiff was involved in an automobile accident and she claims to be suffering pain to her back and neck as a result. Dr. Cranor next saw the plaintiff on December 12, 1974, at which time she again complained of persistent pain in the foot and informed the doctor that she was unable to resume her former employment without a great deal of discomfort. She described the discomfort as being in the region of the surgery. The doctor continued to prescribe activity as the best treatment for her foot. The doctor stated that there were no objective symptoms, and that all symptoms were subjective. Mrs. Braddy was last seen by Dr. Cranor on June 6, 1975, at which time he again concluded that she was able to return to work. Dr. Cranor further concluded that he could not discover any reason for the persistence of the symptoms, and that she should not by a period of perhaps 18 months from the time of the surgery have any symptomatology at all.
The plaintiff was also examined by Dr. Roger Blitz, an orthopedic surgeon, at the direction of the Trial Judge, on October 30, 1975. The conclusion of Dr. Blitz’s examination is that he could find no reason why the plaintiff could not return to her duties as a laborer at the time he examined her.
It is contended on appeal that the Trial Judge erred (1) in awarding Mrs. Braddy benefits for total and permanent disability, when same was not proved by medical testimony, (2) in not finding that there was no causal connection between the accident and her final complaints (3) in finding that the amount of her weekly earnings were proved with certainty (4) and in failing to consider the inconsistency in the plaintiff’s testimony as regards her two versions of the accident and the fact that she stated that she had not worked since the automobile accident, even though she had worked between the date Dr. Cranor discharged her in October and the date of the accident. o
*313 ERROR NO. 1
In Hamilton v. Georgia Pacific Corp., 344 So.2d 400 (La.App. 1st Cir. 1977) we said:
“The law is clear that an employee may show total and permanent disability by proof of his inability to work except with substantial pain. However, the burden of proving that an injury has caused a total and permanent disability is on the claimant in every case. He must establish his claim to a legal certainty and by a reasonable preponderance of the evidence. Crooks v. Belden Corporation, 334 So.2d 725 (La.App. 3rd Cir. 1976); Alfred v. Travelers Insurance Co., 322 So.2d 872 (La.App. 3rd Cir. 1975).
“In deciding whether a claimant has proven his disability, the totality of the evidence, medical and lay, must be examined by the court. Tantillo v. Liberty Mutual Insurance Co., 315 So.2d 743 (La.1975).”
We have reviewed all of the testimony in this record, including the depositions of the two orthopedic surgeons that examined the plaintiff, and we are convinced that the Trial Judge was in error in giving more weight to the testimony of plaintiff and her husband than to the testimony of the treating orthopedic surgeon as well as the testimony of the orthopedic surgeon selected by the Trial Judge, wherein they both concluded that there was no reason plaintiff could not return to work as of the date that each last examined her. Considering that Dr. Blitz concluded as of October 30, 1975, some 19 months after the accident, that plaintiff was able to resume her normal activities, and Dr. Cranor concluded that she should have no pain after 18 months from surgery, which would be March of 1976, we find that the Trial Judge was in error in his award. Compensation will be awarded from the date of the accident through and including the last week of February, 1976, subject to a credit for compensation already paid.
ERROR NO. 2
Defendants contend that the plaintiff failed to prove any causal connection between the accident and her complaints at the time of trial. There is of course no question that there was an accident, and that the injury received by Mrs. Braddy to her ankle was a result of that accident. Considering that we have above concluded that the Trial Judge was in error in granting more weight to the testimony of plaintiff and her husband, rather than to the weight of the expert witnesses, in our conclusion as to the amount of workmen’s compensation to be awarded, we find there is no need for any further discussion of this assignment of error.
ERROR NO. 3
Defendants further contend that the plaintiff failed to prove within a certainty the amount of her weekly earnings. Checks were written to her husband weekly in varying amounts, and from this weekly income, normal operating expenses of their small independent business were deducted, and the net proceeds were then shared by this couple as a family unit. We agree of course that the proof tendered by plaintiff as to the amount of her weekly compensation is not the most exact proof that could have been developed, however, after a thorough review of the record, we are convinced that the Trial Judge was not in error in awarding the plaintiff workmen’s compensation at the rate of $65.00 per week.
ERROR NO. 4
Defendants-appellants next contend that Mrs. Braddy told two different versions of how the accident happened, i. e. a piece of wood fell on her foot or she slipped on the running board, that she consistently failed to report to the doctor for treatment and/or examination, and that she could be considered a possible malingerer were not considered by the Trial Judge, and further that there seems to be some discrepancy in her testimony as to whether she worked between the date that Dr. Cranor discharged her in October of 1974 and the date of the automobile accident in November of 1974. In reviewing in detail the testimony *314 of all of the witnesses in this case, and in particular that of the plaintiff, we do not find that the Trial Judge committed any error at all in failing to take into consideration any inconsistency as referred to by defendant in plaintiff’s testimony.
ANSWER TO APPEAL
Appellee has answered the appeal contending the Trial Judge erred (1) in deleting Harmon Hyde as a solidary defendant and (2) in failing to award penalties and attorney’s fees for the defendants’ discontinuing compensation benefits.
Plaintiff cut and transported timber owned by Hyde, thus she was his employee. Collier v. Southern Casualty Insurance Company, 186 So.2d 161 (La.App. 3rd Cir. 1966), writ refused 249 La. 479, 187 So.2d 448 (1966). It was Hyde to whom plaintiff reported her accident, and it was through his office that she received compensation benefits. Therefore, we find that the Trial Judge was in error in dismissing the suit against Harmon Hyde.
As to the penalties and attorney’s fees, we find no error. The reliance on Dr. Cranor’s letter of October 18 was justification for the termination of compensation benefits. Appellees were neither arbitrary, capricious, nor without probable cause in making their determination based upon this competent medical report.
MOTION TO REMAND
Defendants-appellants have filed in this Court a motion to remand for the purpose of allowing the introduction of a deposition of Dr. Cranor reporting on a reexamination of the plaintiff which took place on April 22, 1977. Considering our disposition of this matter as regards our determination of the length of disability, the motion to remand is denied.
Therefore, for the above and foregoing reasons the judgment of the Trial Court insofar as it dismissed Harmon Hyde is reversed; it is amended so as to reduce the award of compensation from $65.00 per week for 500 weeks subject to a credit of $1,015.00 to an award of workmen’s compensation benefit at the rate of $65.00 per week for 101 weeks subject to a credit of $1,015.00; and plaintiff-appellee is to pay all costs of this appeal.
REVERSED, AMENDED AND RENDERED.

. Though the judgment is only against Triangle, both Triangle and Hyde filed the motion for the appeal, and signed the appeal bond as principals.