421 So.2d 1134 (1982)
Avis HENSON, Plaintiff-Appellee,
v.
HANDEE CORPORATION and Aetna Life and Casualty, Defendants-Appellants.
No. 14968.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1982.
*1135 Goff & Goff by A. Kennon Goff, III, Ruston, for plaintiff-appellee.
Theus, Grisham, Davis & Leigh by Charles H. Heck, Monroe, for defendants-appellants.
Before MARVIN, JASPER E. JONES and FRED W. JONES, JJ.
JASPER E. JONES, Judge.
This is a workers' compensation action. The plaintiff is Avis Henson. The defendants are Handee Corporation and its compensation insurer, Aetna Life and Casualty Company. The defendants appeal a judgment against them, in solido, for total permanent disability benefits of $152.90 per week, medical expenses, penalties, interest, attorney's fees of $3,500 and costs. We amend and affirm.
The appellants set out four assignments of error. They contend the trial judge erred in: (1) finding plaintiff to be disabled contrary to the opinion of her treating orthopedist; (2) finding plaintiff to be totally and permanently disabled; (3) awarding compensation benefits in excess of the statutory maximum; and (4) finding their termination of compensation benefits to have been arbitrary and capricious and awarding penalties and attorney's fees.

*1136 THE FACTS
Mrs. Henson was employed by Handee as an assistant night manager of one of its convenience stores in Ruston, Louisiana. She testified that she was required to place in shelves, store rooms and refrigerated areas the merchandise sold by her employer. She stated that in connection with this stocking activity she often was required to lift cases of the merchandise. She stated that she was required to clean the store which included sweeping, mopping and emptying trash containers.
On April 16, 1980, plaintiff was engaged in putting up stock and was being assisted by her son.[1] Upon lifting a case of motor oil plaintiff experienced back pain. Due to the pain plaintiff ceased stocking and remained behind the store counter for the duration of her shift.
Upon returning to work the following day, plaintiff attempted to assist another employee in stocking candy. Even though the items were light, plaintiff experienced back pain when bending to pick them up. Plaintiff restricted her activities for the remainder of her shift to waiting on customers and operating the cash register. Plaintiff's husband came to the store and completed the stocking, swept and mopped the store.
Henson was off on April 18. When she returned to work on April 19 her husband came with her and remained for the entire shift to assist her because of her continuing back pain.
When her condition was unimproved the following day plaintiff went to the emergency room of the St. Francis Medical Center in Monroe for treatment. Upon returning to Ruston, plaintiff had her husband inform her employer that she would be unable to work that afternoon. Plaintiff has never returned to work.
When Ms. Jennie Lacobee, Aetna's adjuster, learned of plaintiff's injury she contacted plaintiff. From plaintiff Ms. Lacobee learned that an orthopedist, Dr. George Belchic, had recently come to Ruston and at plaintiff's request Ms. Lacobee arranged an appointment with Dr. Belchic to examine and treat plaintiff. Compensation payments were immediately begun.
Dr. Belchic first saw plaintiff on May 8, 1980. He diagnosed her condition as a severe myeloligamentous strain of the lumbar area. Belchic prescribed a muscle relaxant, an anti-depressant and an anti-inflammatory agent and directed plaintiff to return in one week.
Belchic next saw plaintiff on May 13, 1980. He found her condition much the same and prescribed a new anti-depressant and an additional anti-inflammatory agent.
Dr. Belchic saw plaintiff again on May 20. Her condition was found to be improved though she still experienced slight back discomfort and headaches.
Plaintiff was next seen by Dr. Belchic on May 27, 1980. He found her to be doing well with only minimal complaints. He suggested she continue her medication and released her to return to work without physical limitations on June 1.[2] Dr. Belchic so notified Aetna and the insurer terminated compensation benefits.
Plaintiff did not return to work because she felt she was unable to do so because of continuing back pain. The week following plaintiff's release by Dr. Belchic, Ms. Lacobee learned that plaintiff had not returned to work and contacted her and explained that compensation benefits could not be continued because the doctor found that she was able to return to work. When plaintiff indicated that she remained disabled and could not return to work, Ms. Lacobee made another appointment for her with Dr. Belchic.
*1137 Plaintiff missed that appointment and Ms. Lacobee again contacted her. Plaintiff expressed little interest in seeing Dr. Belchic again. Ms. Lacobee then offered to make plaintiff an appointment with another doctor of her choice. Plaintiff requested some time to think about it and was out of town when Lacobee called back two days later. Plaintiff did not try to contact Lacobee until after she had retained counsel, at which time Lacobee refused to accept a collect call from plaintiff's husband.
On June 20, 1980, plaintiff saw Dr. Lemoine Bleich, a general surgeon, for her back problem. Plaintiff had been treated by Dr. Bleich in the past for other health problems unrelated to her back. Before Dr. Belchic came to Ruston, Bleich handled many of the orthopedic problems in the community. Bleich has extensive experience in treating back ailments and an unusual interest in them as he has back pathology for which he had surgery.
In his initial examination of plaintiff, Dr. Bleich found tenderness in the lower back area and limited motion. Bleich concluded that appellee had a strained back (chronic low back or sacroiliac strain) and prescribed pain relievers, cortisone and nerve medication.
Dr. Bleich continued to see and treat plaintiff through the date of the trial, October 20, 1980. At trial, Dr. Bleich testified that plaintiff should avoid activities such as mopping, sweeping and stocking shelves and that she should seek lighter work if those activities were required in her present job. He opined that such activities would cause plaintiff substantial pain. He stated plaintiff's disability had existed for six months at the time of the trial and he did not know if plaintiff would ever be able to return to work.
At the request of Ms. Lacobee, Dr. Belchic examined plaintiff on October 1 and October 3. He again concluded, contrary to Dr. Bleich, that plaintiff could return to work and saw nothing to indicate that she could not have done so at all times subsequent to June 1 when he initially released her to return to work.

ASSIGNMENTS # 1 and # 2
Through their first assignment of error appellants complain of the trial judge's finding, contrary to the testimony of Dr. Belchic, that appellee was disabled. Through the second assignment they contest the conclusion that the disability was total and permanent.
Appellants contend the conclusion that appellee is disabled is erroneous as the testimony of Dr. Belchic, an orthopedic specialist, is entitled to greater weight than that of Dr. Bleich, a general surgeon, as to this orthopedic problem.
While we are in accord with the general rule, relied on by appellants, that the testimony of a specialist in the appropriate field is more persuasive than that of a general practitioner, its application here does not mean that the trial judge was in error.
The general rule is applicable only when the testimony of the specialist is credible and of such nature as to carry greater weight or more convincing or more probable. Wild v. Continental Casualty Company, 234 So.2d 783 (La.App. 1st Cir.1970).
Here, though the testimony of Dr. Belchic is credible, it is no more convincing or probable than that of Dr. Bleich. Further, because of Dr. Bleich's extensive experience, both personal and professional, with back problems, the testimony of Belchic is not of such a nature as to carry substantially greater weight.
Though, under the general rule, Belchic's testimony should perhaps be slightly preferred, that preference does not require the testimony of Dr. Bleich be disregarded and given no weight.
The issue of disability is to be determined by the totality of the evidence, including both lay and medical testimony. Augustine v. Courtney Const. Co., Etc., 405 So.2d 579 (La.App. 3d Cir.1981), writ denied 407 So.3d 735 (La.1981); Cf. Thompson v. Southern Cas. Ins. Co., 349 So.2d 990 (La. App. 2d Cir.1977).
*1138 Here the trial judge's conclusion that the appellee is disabled is strongly supported by the testimony of Dr. Bleich, appellee, her husband and her son. In light of the totality of the evidence the trial judge did not err in concluding, contrary to the testimony of Dr. Belchic, that appellee was disabled.
Appellants next contend that the trial judge erred in concluding that plaintiff was totally and permanently disabled.
The trial judge found that plaintiff was disabled by pain. Whether or not pain is so great as to be disabling is a question of fact. Augustine, supra; Williams v. Hudson East, 261 La. 959, 261 So.2d 629 (1972). A worker who cannot return to any gainful employment without suffering substantial pain is entitled to benefits for total disability. Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La.1981).
Upon a showing by a plaintiff that his physical condition, mental capacity, education, training, age or other factors combine to place him at a substantial disadvantage in the employment market, he has made out a prima facie case for classification in the "odd-lot" category; the burden then devolves on the employer or insurer to show that some form of suitable employment is regularly and continuously available to plaintiff. A disabled worker who falls within the "odd-lot" category is total permanently disabled within the contemplation of the workers' compensation law. Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980).
Plaintiff was forty-eight years old at the time of her injury. She had only a seventh grade education and no vocational or technical training. Her prior work experience was as a hospital aide, hospital sitter[3] and a waitress.
Plaintiff's education, training and experience qualify her only for work of which physical labor is a substantial component. The trial judge found plaintiff disabled from such work by her back pain. As that is a factual conclusion, we may not disturb that finding absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The trial judge's conclusion that plaintiff suffers serious back pain is strongly supported by the record. Plaintiff testified as to the severe back pain she suffers. Both Dr. Belchic and Dr. Bleich testified that they believed appellee's complaints of pain. Plaintiff's husband and son testified that she endures substantial pain when merely bending, stooping or performing routine household tasks.
We find no error in the trial judge's conclusion that plaintiff experiences substantial pain when performing physical tasks such as mopping, sweeping or bending over.
In an effort to rebut plaintiff's prima facie showing of "odd-lot" status, appellants contend that work at Handee Mart[4] is light duty work and available to plaintiff. This contention is based on the testimony of Ron Hebert, Handee's zone manager, and Elizabeth Ambrose, the manager of the Handee Mart at which plaintiff was injured.
Hebert and Ambrose paint a picture of a much less strenuous workplace than the one described by plaintiff. The trial judge concluded that the nature of employment at Handee Mart required that one frequently perform strenuous tasks. In reaching that conclusion the trial judge obviously rejected the testimony of Hebert and Ambrose and accepted that of plaintiff.
A factual determination by the trial judge based upon his evaluation of credibility cannot be disturbed absent manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Hollis v. Travelers Ins. Co., 368 So.2d 154 (La.App. 3d Cir.1978). There *1139 was no manifest error in the trial judge's conclusion as to the nature of employment at Handee Mart.
At the time of trial plaintiff had been disabled for over six months. There was no indication when, if ever, her back condition would improve sufficiently for her to return to work without substantial pain. A judgment for permanent total disability is appropriate when the claimant is totally disabled and the duration of that disability is indefinite. Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976); Wilson v. Ebasco, supra.
The trial judge correctly found plaintiff to be permanently and totally disabled under LSA-R.S. 23:1221(2).[5] These assignments of error are without merit.

ASSIGNMENT # 3
Through this assignment appellants attack the award of benefits in the amount of $152.90 per week, which is 662/3% of plaintiff's average weekly wage of $229.36, as in excess of the statutory maximum. We agree.
LSA-R.S. 23:1202(1) limits the maximum weekly benefit to "... sixty-six and two-thirds per centum of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law..." The maximum applicable to this injury is $148.00 per week and the award will be reduced to that amount.[6]

ASSIGNMENT # 4
Through their final assignment of error appellants attack the award of penalties and attorney's fees.[7]
When an insurer's refusal to pay benefits is arbitrary, capricious or without probable cause the claimant may also recover penalties and attorney's fees. LSA-R.S. 22:658.[8] Whether a refusal to pay benefits is arbitrary, capricious, or without probable cause is a question of fact on which we may not disturb the trial judge's findings absent manifest error. Scott v. Sears, Roebuck & Co., 406 So.2d 701 (La.App. 2d Cir.1981). We conclude that the trial judge was clearly wrong in finding Aetna's conduct arbitrary and capricious and awarding penalties and attorney's fees.
Aetna terminated benefits only after Dr. Belchic released plaintiff for work without restrictions. When plaintiff did not return to work Aetna's adjuster, Ms. Lacobee, investigated *1140 to find out why. Ms. Lacobee scheduled plaintiff an appointment with Dr. Belchic when she learned that plaintiff felt she was unable to work because of pain. After plaintiff missed that appointment, Ms. Lacobee attempted to accommodate plaintiff by offering to schedule an appointment with another doctor of her choice. Plaintiff did not notify Ms. Lacobee of her choice and never tried to contact the adjuster until after she had obtained an attorney.
On August 13, Ms. Lacobee was first supplied with Dr. Bleich's complete reports of his examinations and treatment of plaintiff on June 20 and July 1, wherein Dr. Bleich indicated that he was of the opinion that plaintiff could not go back to her employment with Handee Mart. Upon receipt of this information Ms. Lacobee made an appointment with Dr. Belchic for September 19 to re-examine plaintiff to determine if he continued to believe plaintiff was able to return to work. Plaintiff failed to keep this appointment because she did not receive proper notice because of a failure of communication between plaintiff and her attorney. On September 26, when Ms. Lacobee discovered plaintiff had not kept the September 19 appointment with Dr. Belchic, Ms. Lacobee made plaintiff another appointment with Dr. Belchic for October 1 and on this date, and on October 3, plaintiff was re-examined by Dr. Belchic. Following these examinations Dr. Belchic advised Ms. Lacobee in writing and verbally that he was of the opinion that plaintiff could return to work.
An insurer may rely on a report from the employee's treating physician that employee is able to return to work. Breaux v. Marine Elec. & Reliance Ins. Co., 369 So.2d 196 (La.App. 3d Cir.1979), writ refused 371 So.2d 1344 (La.1979). An insurer is not arbitrary and capricious in discontinuing benefits on the strength of such a report.[9]Braddy v. Triangle Timber, Inc., 353 So.2d 311 (La.App. 1st Cir.1977), writ refused 354 So.2d 1051 (La.1978); Thompson v. Southern Cas. Ins. Co., supra; Graziano v. Lallie Kemp Charity Hospital, 400 So.2d 1164 (La.App. 1st Cir.1981).
Here benefits were terminated only after plaintiff was released for work. The insurer promptly investigated plaintiff's failure to return to work and sought to have her re-examined to discover the problem. However, plaintiff was completely uncooperative and stifled the insurer's efforts to have her re-examined.
When the insurer received the medical reports of Dr. Bleich of his examination of plaintiff on June 20 and July 1 wherein he expressed the opinion plaintiff was disabled, the insurer did not ignore these reports and blindly rely upon the May 27 report of Dr. Belchic. On the contrary, the insurer immediately made plaintiff an appointment with Dr. Belchic in order to obtain a current evaluation of plaintiff's condition by Dr. Belchic.
The insurer's actions were reasonable and exemplary of the concern for claimants and insureds which LSA-R.S. 22:658 was designed to promote. The trial judge was clearly wrong in awarding penalties and attorney's fees.
For the foregoing reasons the judgment of the district court is amended to reduce weekly benefit to $148.00 and eliminate the award of penalties and attorney's fees.
As AMENDED the judgment is AFFIRMED. Costs on appeal are taxed equally between the plaintiff and defendants.
AMENDED and AFFIRMED.
NOTES
[1] It appears that plaintiff's son and husband occasionally assisted her with her work, though neither was employed nor paid by Handee.
[2] Dr. Belchic testified that he felt plaintiff was able to return to work as of May 27 but he set the release date at June 1 because of her headaches and because he believed it a better policy not to release an employee to return to work in the middle of a work week.
[3] Plaintiff testified that a hospital sitter sits with a patient in his room. The sitter tends to the patient and helps him turn over and performs other assistance to the patient.
[4] Handee Corporation's stores are called "Handee Mart(s)."
[5] R.S. 23:1221(2)"(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability."
[6] The average weekly wage paid in all employment subject to La. Employment Security Law for any period may be obtained by contacting the State Department of Labor, Office of Employment Security.
[7] The judgment awards penalties and attorney's fees against the defendants, in solido. Even if the award of penalties and attorney's fees was justified, it should have been made against the insurer alone. Wiley v. Southern Cas. Ins. Co., 380 So.2d 214 (La.App. 3d Cir. 1980).
[8] R.S. 22:658All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees.
[9] However, the insurer may not ignore later contrary information and blindly rely upon an earlier report. West v. Belden, 396 So.2d 1004 (La.App. 3d Cir.1981), writ denied 401 So.2d 976 (La.1981).