AYRES, Judge.
This is an action under the workmen’s compensation statute, LSA-R.S. 23:1021 et seq.
By virtue of an accidental injury allegedly sustained by plaintiff in the course and scope of his employment and the disabilities resulting therefrom, plaintiff seeks to recover from his former employer, Phipps Erection, Inc., and its insurer workmen’s compensation at the maximum statutory rate plus hospital and medical expenses as well as penalties and attorney’s fees provided in cases where the failure to pay compensation when due was arbitrary.
After trial, the court concluded plaintiff had not sustained his burden of proof by a reasonable preponderance of the evidence and had failed to establish to a degree of legal certainty he sustained accidental injuries while employed by Phipps Erection, *368 Inc. From a judgment accordingly rejecting his demands, plaintiff appealed.
Phipps Erection, Inc., engaged in the construction of a warehouse for Gym-Dandy, Inc., in Bossier City, employed plaintiff and others as iron workers to install the necessary steel beams and frames, which included steel purlins which, as we understand, are longitudinal members in a roof frame used to support the common rafters, or the like, about midway between the plate and the ridge. In the instant case these purlins were shown to have had a length of 27 feet and weights varying from 80 to 100 pounds. Plaintiff testified, however, his impression was that the purlins had a length of 33 feet and weighed as much as 150 pounds. The purlins were hoisted, or lifted, into place manually by two men, one at each end standing on some part of the overhead framework, by means of ropes attached at each end of the purlins. After being hoisted into place, the purlins were bolted to the rafters. At the time plaintiff claims to have been injured, this work was being performed by plaintiff and a fellow employee, Don Draper.
Plaintiff described the weather as hot and humid on the day of the accident, and he testified that near noon he began to have cramps or to experience muscle spasm in his legs and arms. He thought, therefore, he had “burnt out” from the heat, whereupon, about 2:00 p.m., he left the job, went home, and rested until late in the afternoon when his co-worker, Don Draper, came by his home.
Plaintiff accompanied Draper to a rodeo in Monroe. Plaintiff participated in the activities, rode a horse as a hazer; that is, he rode a horse to the right of a steer to keep it in proper alignment as it crossed the arena so that the steer might be bulldogged by Draper. Two days later, on Saturday night, July 19, 1969, Stoddard went to El Dorado, Arkansas, and again participated in a rodeo, performing in an event called “bulldogging” wherein Draper acted as a hazer, and plaintiff, as bulldogger, slid off his horse, caught the steer by its horns, twisted its neck, and attempted to wrestle it to the ground.
In the meantime, on the morning of July 19, 1969, Stoddard claims to have sought out his physician, Dr. B. R. Siebenlist, and requested medication for his back. Plaintiff testified to again having seen Dr. Sie-benlist on July 21, 1969, when he was referred to Dr. E. C. Simonton, an orthopedist. Upon being first seen by the doctor on July 24, 1969, plaintiff gave a history of having noted an onset of pain in his back on July 18, 1969, which persisted and radiated into his right thigh but not below the right knee. He related an experience of low back pain about a month prior thereto which lasted for several days. Upon examination, plaintiff’s condition was diagnosed as an acute lumbosacral strain with nerve-root irritation; possible herniated nucleus pulposus and a congenital anomaly in the lumbosacral area. Plaintiff was fitted with a brace. He again returned to Dr. Simonton on July 28, 1969, when an examination disclosed an absence of a previously noted list, with marked improvement in range of motion, but lateral bending while in hyperextension produced pain. He was advised to avoid heavy lifting, but it was suggested that he might return to work on a trial basis, which was without success.
A myelogram was performed on August 19, 1969, which showed a very large filling defect on the right of the fifth lumbar in-terspace. The following day surgery was performed and a herniated nucleus pulpo-sus was excised. Plaintiff was discharged from the hospital on August 25, 1969. He was seen thereafter at regular and frequent intervals until June 1, 1970. During these interviews plaintiff was again advised to refrain from heavy lifting, but he eventually informed the doctor that he was back performing his work as an iron worker.
There can be no question but that plaintiff, sometime, somewhere, and by some means, became afflicted with a herniated disc. As already noted in his history *369 recorded by Dr. Simonton, plaintiff stated he experienced similar difficulties a month prior to the date he claimed to have been injured. Moreover, he failed to make complaints, even to his fellow workers, that he sustained an accident or accidental injuries on the job, and it was only after he engaged in rodeo activities on two occasions that he complained of accidental injuries on the job and sought the name of his employer’s insurer. On two occasions subsequent to the date he claimed accidental injuries, he engaged in the activities of a rodeo, participating first as a hazer and then as a bulldogger of a steer.
In a workmen’s compensation case, the rule has been consistent that a claimant may establish a right to workmen’s compensation benefits by his or her testimony alone where the testimony is consistent and supported by the surrounding circumstances, provided there is nothing to discredit his or her testimony.
Clement v. Fidelity & Casualty Co. of New York, 220 So.2d 575 (La.App., 3d Cir. 1969); Lewis v. Celotex Corporation, 222 So.2d 647 (La.App., 4th Cir. 1969); Hawkins v. Orleans Parish School Board, 254 So.2d 276 (La.App., 4th Cir. 1971); Webre v. Service Painting Company of Beaumont, 252 So.2d 675 (La.App., 1st Cir. 1971).
It was pointed out and emphasized in Roberts v. M. S. Carroll Co., 68 So.2d 689, 693 (La.App., 2d Cir. 1953), that:
“ . . . The jurisprudence of every appellate tribunal of this state has incontrovertibly established the rule that the plaintiff in a compensation case, as in other cases, bears the burden of proof. He is required to establish his claims to a legal certainty by a reasonable preponderance of the evidence. Speculation, conjecture, mere possibility, and even unsupported probability, are not sufficient to support a judgment.”
An element that a claimant in a workmen’s compensation case must establish is that the accident occurred during the course and scope of his employment.
Hawkins v. Orleans Parish School Board, supra.
This, as stated, may be done by his testimony alone only if his statements are supported by the facts and circumstances and nothing appears in the record to discredit his testimony.
In concluding that plaintiff had not sustained the burden of proof imposed upon him, the trial court pointed out that plaintiff testified his back was injured on the job between 12:00 and 2:00 p.m. on July 17, 1969. This statement is not supported by the surrounding circumstances. He testified as to no back pain at that time, and his subsequent activities at the rodeo on that day and at the one two days later did not support his contention. In addition, the medical testimony did not support the conclusion that plaintiff suffered a ruptured disc on July 17, 1969. His physician, Dr. Simonton, expressed the opinion that if plaintiff experienced no back pain during or after work on July 17, 1969, the injury more than likely occurred after that date.
Moreover, the consensus of the medical testimony is that riding a horse in a rodeo on the night of the day on which plaintiff claimed to have been injured, and also riding a horse and bulldogging a steer two days later, was inconsistent with a disc injury. Dr. Baer I. Rambach stated that with a disc injury plaintiff would have had too much discomfort to ride in a rodeo. Dr. T. M. Oxford testified that with a ruptured disc plaintiff would have experienced severe pain immediately following the injury.
Under the circumstances shown to exist in this case, it would be most difficult to conclude with any degree of certainty that plaintiff sustained accidental injuries in the course and scope of his employment resulting in his disability. It is impossible to determine when or where plaintiff sus *370 tained accidental injuries, that is, whether in the course of his employment or while engaged in either of the rodeo activities.
We can only conclude that plaintiff failed to support his claim by the requisite preponderance of evidence. The most that can be said is that he succeeded in establishing a possibility of disability resulting from an accidental injury.
Finding no error in the judgment appealed, it is affirmed at plaintiff-appellant’s costs.
Affirmed.