344 So.2d 400 (1977)
Clifton M. HAMILTON
v.
GEORGIA PACIFIC CORP.
No. 11181.
Court of Appeal of Louisiana, First Circuit.
March 21, 1977.
*401 Arthur Cobb, Baton Rouge, of counsel for the plaintiff-appellant.
Charles S. McCowan, Jr., Baton Rouge, of counsel for the defendant-appellee.
Before LANDRY, EDWARDS and COLE, JJ.
EDWARDS, Judge.
This is a suit to recover workmen's compensation benefits. The trial court awarded benefits for impairment of a physical function at the rate of $65.00 per week for a period of fifty-two weeks and the costs of all medical treatment. From this award, plaintiff has appealed claiming that he is totally and permanently disabled.
On November 5, 1974, plaintiff, Clifton M. Hamilton, twisted his left foot while walking down a concrete incline in the course and scope of his employment for defendant, Georgia Pacific Corporation. Mr. Hamilton was initially seen by Dr. Harry Morris, the company doctor, at Lane Memorial Hospital and referred to Dr. Joe Morgan. Dr. Morgan diagnosed the injury as an avulsion fracture of the base of the fifth metatarsal with a small chip fracture from the cuboid of the left foot. A short leg walking cast was applied and plaintiff was allowed to go home.
Mr. Hamilton was subsequently treated by three orthopedic surgeons, Drs. Morgan, Hughes, and Strange, and by his family practitioner, Dr. Garner. On each occasion, Mr. Hamilton complained of pain in his left foot, associated with prolonged use of the extremity.
At the time of the injury, Mr. Hamilton was employed as a machine room superintendent by Georgia Pacific. He describes his job in physical terms as one requiring considerable running, climbing, squatting, and bending.[1] He has been unemployed since the injury,[2] despite the fact that he has sent out resumes to secure a job.
Georgia Pacific paid Mr. Hamilton compensation benefits for a period of two weeks and then discontinued payments. The decision to stop payments was made after evaluating the medical report of February 26, 1975, from Dr. Morgan which *402 indicated that Mr. Hamilton could return to work.
Plaintiff contends that the trial court erred in not awarding total and permanent benefits. LSA-R.S. 23:1221(2). He maintains that he is unable to perform work similar to that engaged in previous to the injury because of pain, and is therefore totally and permanently disabled.[3]
At trial, Mr. Hamilton testified that he has experienced continuous difficulties associated with his injury. He stated that he suffers pain in his left foot whenever he walks or stands for any sustained period. Testifying further, he stated that he could not perform work similar to his work at the time of the injury due to this pain. Mrs. Hamilton testified that her husband walks with a pronounced limp and often complains of pain in his left foot.
Medical reports constituted the only expert evidence at trial. These reports do not substantiate Mr. Hamilton's contentions.
Dr. Morgan stated in a report dated February 26, 1975:
"Mr. Hamilton was last seen on February 24, 1975. He continued to complain of pain on the lateral aspect of the left ankle and foot. There was no visible swelling of either the foot or ankle and a complete range of motion was obtainable. There was no tenderness to direct palpation over the fracture site. . . . "At that time he was advised that he was making satisfactory progress and that within about two weeks, I thought he might return to work and perform his duties satisfactorily."
On March 21, 1975, Dr. Hughes reported of Mr. Hamilton's condition:
"The remaining osteoporosis of the foot will gradually clear up in time with continued activity and weight bearing. I do not believe that further treatment is indicated for this injury. I believe that he should be able to return to work without any appreciable disability."
Dr. Strange examined Mr. Hamilton twice at the request of Georgia Pacific. On April 22, 1975, he reported:
". . . I predict this man will be able to accomplish the type employment that he could previously and would rate him approximately 10 to 15% physical impairment. . ."
Again on February 16, 1976, he reported:
". . . the patient has continued to complain of pain in the foot with inversion strains, excessive ambulation, and climbing.
". . . I have awarded him 15% of his lower extremity, or about 25% of the foot, either way you like. I still maintain that as the patient describes his job to me, he could perform it.
". . . I do not anticipate complete recovery in this patient physically as I recognize some component of an emotional overlay with his injury." (emphasis supplied)
The law is clear that an employee may show total and permanent disability by proof of his inability to work except with substantial pain. However, the burden of proving that an injury has caused a total and permanent disability is on the claimant in every case. He must establish his claim to a legal certainty and by a reasonable preponderance of the evidence. Crooks v. Belden Corporation, 334 So.2d 725 (La.App. 3rd Cir. 1976); Alfred v. Travelers Insurance Co., 322 So.2d 872 (La.App. 3rd Cir. 1975).
In deciding whether a claimant has proven his disability, the totality of the evidence, medical and lay, must be examined by the court. Tantillo v. Liberty Mutual Insurance Co., 315 So.2d 743 (La.1975).
In the instant case, the trial court, after considering both medical reports and the testimony of the Hamiltons, ruled that total *403 and permanent disability, based on severe pain, had not been proven. Rather, the trial court found that the usefulness of the physical function of plaintiff's foot was impaired, but that the condition of his foot did not disable him from performing any of the duties of his former employment. Cormier v. Zigler Shipyards, 264 So.2d 236 (La.App. 3rd Cir. 1972). We agree.
Great weight is given to the trial court's determination of disability, since it is an issue of fact. This follows since the trial judge is in a better position to weigh the credibility and demeanor of witnesses than an appellate court, which has only a transcript. Accordingly, a trial court's determination will not be disturbed in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Campanella v. State, Dept. of Highways, 328 So.2d 798 (La.App. 1st Cir. 1976).
The record shows that all three orthopedic surgeons, who treated Mr. Hamilton, are in agreement that his injury did not permanently disable him, and that he should be able to resume work similar to that at the time of the injury.
This evidence is sufficient to maintain the trial court's determination that the injury was not such as to render the appellant totally and permanently disabled.
We find, however, that the trial court erred in not awarding the compensation benefits over a one hundred week period as provided in LSA-R.S. 23:1221(4)(p). The trial court has discretion in setting the amount of compensation to be paid up to a maximum, but it has no discretion in fixing the period for which benefits are paid. This period must be fixed at one hundred weeks. Golden v. Starns-McConnell Lumber Corp., 172 So.2d 78 (La.App. 1st Cir. 1965); Macaluso v. Schill-Wolfson, 56 So.2d 429 (La.App. Orl. Cir. 1952).
The awarding of penalties or attorney's fees is not appropriate in this case, since Georgia Pacific's reliance on medical reports in refusing to pay compensation was not arbitrary and capricious, LSA-R.S. 23:1201.2.
For the reasons assigned, the judgment of the trial court is amended to increase the period for which benefits are due to one hundred weeks, and affirmed in all other respects at defendant's cost.
AMENDED AND AFFIRMED.
NOTES
[1] We accept the job description given by Mr. Hamilton, even though there was testimony to the effect that the job was administrative rather than physical, since it was conceded that the day-to-day activities as superintendent were left to his discretion.
[2] Mr. Hamilton was terminated by Georgia Pacific on the same date as the injury and he remained unemployed up to the time of trial. It is not contended that this termination was related to the injury. However, he continued to receive wages through January 31, 1975.
[3] Since the injury occurred in 1974, we look to the law on total and permanent disability as it existed prior to the 1975 amendments to the Workmen's Compensation Act. At that time, total and permanent disability was defined in LSA-R.S. 23:1221(2), as the inability to do work of any reasonable character. This was interpreted to mean work of the same or similar nature as that engaged in prior to the injury