COVINGTON, Judge.
This is an appeal from an unsuccessful demand for workmen’s compensation benefits. We affirm.
The sole issue presented by this appeal is whether the plaintiff-appellant, Ernest Robertson, age 19, is totally and permanently disabled as a result of a tractor accident on November 7, 1974, while in the employ of defendant, Valhi, Inc. (formerly Southdown Land Company). The workmen’s compensation insurance carrier is Commerical Union Insurance Company, also named as a defendant.
The material facts are that the plaintiff, operating a tractor pulling a loaded cane wagon, was coming out of the sugar cane field, when the plaintiff swung in a left turn onto the headland, the tractor rolled to the right, causing the plaintiff to fall off the tractor. In so doing, he allegedly struck his back on an iron bracket which was a part of the tractor, causing injury.
Following his accident, he was taken to the emergency room at St. Ann Hospital in Raceland, Louisiana, where he was seen and examined by Dr. W. L. Simpson, who made a diagnosis of acute back sprain and hospitalized him for observation. X-rays were taken of the lumbar spine and were normal. After an uneventful stay in the hospital he was discharged.
It is admitted that the injury is covered under the workmen’s compensation law, that the defendants paid the plaintiff for the period of November 8, 1974, to June 19, 1975, at the rate of $65.00 per week, or a total sum of $2,080.00, and that medical benefits in the amount of $734.25 were also paid.
It is the appellant’s contention that the trial court was manifestly in error in not finding that he was totally incapacitated from performing work of any reasonable character for which he is suited by reason of his education, training and experience. He alleges that he is still in need of medical attention as a result of the injury and that he is entitled to all benefits which he should receive as a result of this total and permanent disability. Additionally, it is contended that the defendants’ discontinuance of the compensation was arbitrary, capricious, and without probably cause so as to entitle the appellant to statutory penalties, including reasonable attorney’s fees. Defendants’ position is that since the plaintiff was discharged to return to work with no physical disability, no further compensation benefits *151 are due to him, and that their failure to pay benefits beyond June 19, 1975, could not be considered arbitrary, capricious, or without probable cause.
The plaintiff testified that his low back and the calves of both legs were bothering him when he was hospitalized following the accident. He claimed to be no better when he was discharged from the hospital. On the date of trial, June 21, 1976, he testified that he still had the same symptoms.
Following his discharge from the hospital, Robertson went to see Dr. Dexter Gary, an orthopedic surgeon in Houma, Louisiana, on December 5, 1974. From the doctor’s deposition we find that x-rays were taken of the plaintiff on this visit and Dr. Gary considered them “to be within normal limits, showing no fracture, dislocations or other evidence of disk (sic) degeneration.” It was Dr. Gary’s opinion that “he had no disability, and he was discharged to return to work.” Dr. Gary further testified that the plaintiff was reevaluated in his office by his associate on March 7, 1975, and that there was “nothing to show any acute problem; normal examination, and the recommendations to return to work without disability, was again made.” Dr. Gary also stated that he did not feel that either a discogram or myelogram was needed.
After his initial visit to Dr. Gary’s office on December 5,1974, the plaintiff consulted Dr. R. C. Llewellyn, a specialist in neurological surgery, in New Orleans, Louisiana, who examined Robertson on December 30, 1974, for purposes of evaluation. He again saw Robertson on March 5,1975, which was two days before he was seen by Dr. Gary’s associate orthopedic specialist. At that time, according to Dr. Llewellyn, Robertson was still complaining of pain in his back. Appellant was seen for the third time by Dr. Llewellyn on October 23,1975, still complaining and claiming to be unable to return to work. His last visit to Dr. Llewellyn was on May 10, 1976, and the doctor opined that Robertson’s condition seemed to have worsened. In his report after the first three visits Dr. Llewellyn recommended that the plaintiff be hospitalized and x-rays taken, followed by discograms and myelo-grams.
It is clear that Dr. Llewellyn never made a clinical diagnosis, despite four office visits, because he indicated each time that hospitalization, with x-rays, myelograms and discograms, was probably needed in order to make a diagnosis. For the same reasons, he gave no treatment. Dr. Llewellyn testified that the failure of the plaintiff to seek out-patient physical therapy after the accident could have been responsible for his slow recovery. The doctor acknowledged that he had not seen any x-rays of Robertson and had not discussed the case with any of the other doctors who had seen Robertson.
On August 7,1975, the plaintiff was seen by Dr. Pete H. Rhymes, an orthopedist, complaining of pain in his back which radiated into his buttocks. The x-rays were normal and Dr. Rhymes found no condition justifying a myelogram or discogram. He diagnosed appellant’s condition as a low back sprain and testified that Robertson had no discogenic disease.
The last orthopedic surgeon consulted in this matter was Dr. Ray J. Haddad, Jr., who saw the plaintiff on November 28, 1975. Again, x-rays were taken. According to Dr. Haddad, the x-rays showed slight congenital deformity, but no sign of traumatic change. Dr. Haddad’s impression was that “from an orthopedic standpoint, there was no evidence of nerve root irritation. I do not think he has demonstrable significant orthopedic objective findings.” He did not feel that the plaintiff exhibited enough physical or clinical evidence to warrant a myelogram or discogram. Dr. Had-dad found nothing to keep Robertson from returning to work. There was no lay testimony other than that of the plaintiff. ■ After reviewing the medical evidence, the trial judge found that the plaintiff had not proved a disability beyond the June 19,1975 date. Therefore, he dismissed the plaintiff’s suit, remarking in his excellent reasons for judgment:
“Like all back injuries, this is a pretty subjective matter. If a complainant says *152 his back is hurting, there is really no way for a doctor to disprove this. An analysis of the evidence, however, reveals the preponderance of evidence to be on the side of the defendant. In support of plaintiff’s claim he offered his testimony that his back hurt and continues to prevent him from returning to work. In corroboration of this is offered the deposition of Dr. Llewellyn. Although Dr. Llewellyn wrote an extensive report after each visit, the sum total of his findings is that he wanted to look further and that he never really made a diagnosis to establish the extent of plaintiffs disability, if any, and whether the disability that did exist might have been more congenital than due to the accident. On the other hand, we have the testimony of the physician who immediately treated the plaintiff, that he felt that there was no disability at the time he discharged him from the hospital and the testimony of three orthopedic specialists, who later examined plaintiff, took x-rays, and concluded that the plaintiff was capable of returning to work.
“The Court is aware that merely because the score stands 3 to 1 in favor of the defense, the validity of plaintiff’s claim should not be thrown out, but the burden is on the plaintiff if he wishes to maintain his position to prove by a preponderance of the evidence the correctness of his position. This he has failed to do. Dr. Llewellyn’s conclusion, the Court feels, is more speculative than clinical, and in the face of the positive testimony of the other orthopedic specialists, the Court must side with the defendant’s position. In Allen v. Georgia Casualty & Surety Company, 324 So.2d [900] 901, the Third Circuit quoted with approval the trial court’s summation of that case:
‘The plaintiff’s complaints of continuing pain and suffering in his back and chest were not supported by any of the medical testimony but in fact were contradicted by the majority of it. The rule has been consistent in workmen’s compensation cases that the claimant may establish a right to workmen’s compensation by his testimony alone where the testimony is consistent and supported by the surrounding circumstances, provided there is nothing to discredit his testimony. Stoddard v. Insurance Company of North America, et al., 271 So.2d 367, Court of Appeal, Second Circuit, November, 1972.
‘The Court can only conclude that the plaintiff failed to support his claim by the required preponderance of evidence, and accordingly, the plaintiff’s suit should be dismissed at his cost.’
“By a strange coincidence the plaintiff in that case was also injured on November 7, 1974, and the Court concludes that in this case as in that one, while the claimant might have established a right to workmen’s compensation by his testimony and Dr. R. C. Llewellyn’s, in our case as in that case, the plaintiff’s case is discredited by the testimony of the other orthopedic specialists.”
The appellant complains that the trial court erred in disregarding the testimony of Dr. Llewellyn and in accepting the testimony of the three orthopedists. He contends that the quoted portion of the trial judge’s reasons implies that Dr. Llewellyn made neither a diagnosis nor a determination of disability. To refute this conclusion of the trial judge, the appellant offers the following portion of Dr. Llewellyn’s testimony:
“Q. Now, on each occasion of the exams you found objective evidence of injury?
A. I found objective evidence of muscle spasm and restriction of back mobility which I interpreted was a direct consequence of his injury.
Q. After having seen him some four times over a period of a year, have you been able to arrive at a clinical diagnosis?
A. I have not as to establishing an exact diagnosis as such as a ruptured disc or a bulging or torn disc or whether his problem is severe muscle injuries or lumbosacral joint sprains. I felt that his complaints and findings were a consequence of one of these mechanical post-injury problems. I felt that an *153 exact post-injury diagnosis could be established by the patient having x-rays, myelograms and/or discograms performed.”
It does appear from the quoted testimony that Dr. Llewellyn did find some objective symptoms; however, we do not consider the finding of objective symptoms equivalent to diagnosing a patient’s condition. Rather, the quoted testimony supports the trial judge’s opinion that Dr. Llewellyn never made a diagnosis.
Moreover, it is clear that the plaintiff was not sent to Dr. Llewellyn for treatment; he was sent to the doctor only for the purpose of evaluation. At no time did Dr. Llewellyn administer any treatment to the plaintiff. We will not give Dr. Llewellyn’s testimony the weight to which we would accord that of a treating physician. His testimony is entitled only to the same weight as that of each of the other medical experts.
Furthermore, even if we accepted the appellant’s position that Dr. Llewellyn had unequivocally diagnosed the plaintiff’s condition as one of total and permanent disability, this would not necessarily mean that the plaintiff would prevail in this lawsuit. We have carefully read the depositions of all the medical experts and find the testimony of the three orthopedists to be more persuasive and convincing than that of the neurological surgeon. We find Dr. Llewellyn’s testimony to be vague and speculative. It appears to us that he never intended to express a firm opinion of the plaintiff’s condition unless and until he had the benefit of a myelogram and/or disco-gram. The other doctors considered such medical tests unnecessary and expressed their unequivocal opinions that the plaintiff was not totally and permanently disabled.
It is well settled that in a suit for workmen’s compensation benefits, the nature and extent of disability are issues of fact which must be determined in the light of the facts and circumstances of each individual case. Griffin v. Hochendel, 263 So.2d 474 (La.App. 1 Cir. 1972), writ den. 262 La. 1105, 266 So.2d 425.
Equally well settled is the rule that a party claiming workmen’s compensation benefits must establish his alleged disability by a preponderance of the evidence. Griffin v. Hochendel, supra; Perkins v. Southern Casualty Insurance Company, 262 So.2d 791 (La.App. 3 Cir. 1972).
Also pertinent herein is the principle that decisions of the trial court on questions of fact will not be disturbed on appeal, unless found to be manifestly erroneous. Orgeron v. New Orleans Stevedoring Company, 294 So.2d 844 (La.App. 4 Cir. 1974), writ denied La., 299 So.2d 361; Clevinger v. Continental Insurance Companies, 211 So.2d 718 (La.App. 2 Cir. 1968); Spreen v. Gibbs, 305 So.2d 494 (La. 1974). This is especially true when the trier’s decision is predicted upon an evaluation of the testimony of conflicting witnesses; Rayner v. Rayner, 216 La. 1099, 45 So.2d 637 (1950).
A careful review of the medical testimony and other evidence supports the conclusion reached by the trial court. The plaintiff failed to carry the burden of proof at the trial and, on appeal, he has failed to establish manifest error on the part of the trial court. The judgment is affirmed at plaintiff-appellant’s costs.
AFFIRMED.