405 So.2d 579 (1981)
Daniel AUGUSTINE, Plaintiff-Appellee,
v.
COURTNEY CONSTRUCTION COMPANY OF ALEXANDRIA, INC. and Safeco Insurance Company, Defendants-Appellants.
No. 8358.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1981.
Writ Denied December 4, 1981.
*580 Franklin, Moore & Walsh, Carolyn Pratt Perry, Baton Rouge, for defendants-appellants.
Harold J. Brouillette, Marksville, for plaintiff-appellee.
Before GUIDRY, FORET and SWIFT, JJ.
FORET, Judge.
Daniel Augustine (appellee) brought this workmen's compensation action against Courtney Construction Company of Alexandria, Inc. and Safeco Insurance Company, his employer and its workmen's compensation insurer.
The trial court rendered judgment in favor of appellee and against appellants, who appealed from that judgment and urge the trial court erred in that:
*581 (1) In finding that appellee is totally and permanently disabled on the basis that he is unable to work without substantial pain;
(2) Appellant is not limited to benefits under the schedule of specific losses found in LSA-R.S. 23:1221(4);
(3) And finally, in finding that Safeco Insurance Company was arbitrary or capricious in terminating the workmen's compensation benefits on October 15, 1980.

FACTS
Appellee was riding in a truck owned by his employer and being driven by a fellow employee on February 21, 1979, when that truck collided with an automobile. The accident occurred on U.S. Highway 71 in St. Landry Parish, approximately twelve miles south of the town of Bunkie. Appellee sustained injury to his back and right wrist and was taken by ambulance to Bunkie General Hospital.
Safeco paid appellee workmen's compensation benefits of $141.00 per week from the date of the accident until October 15, 1980. Appellee brought this action alleging that, as a result of the injuries he received in the accident, he has been totally incapacitated from engaging in any gainful occupation for wages (except very light work while enduring severe pain), and that he is totally and permanently disabled within the meaning of the Louisiana Workmen's Compensation Act. See LSA-R.S. 23:1021, et seq. Appellee further alleged that Safeco had acted arbitrarily and capriciously in terminating his benefits and that he was then entitled to the statutory penalties and attorney's fees.
The trial court rendered judgment in favor of appellee finding him to be totally and permanently disabled and awarding him $141.00 per week. The trial court also found that appellant, Safeco Insurance Company, had acted arbitrarily and capriciously in terminating payment of benefits to appellee and assessed the statutory penalty of 12% of all unpaid benefits due and attorney's fees of $3,500.00. Appellants appealed suspensively.

APPELLEE'S DISABILITY
The trial court found that appellee could not perform the tasks associated with his employment at the time of the accident without substantial pain. It was on the basis of this finding that the trial court held that appellee was totally and permanently disabled.[1]
Appellants contend that the trial court committed manifest error in finding appellee to be totally and permanently disabled. They argue that the evidence establishes that appellee is neither totally and permanently disabled nor is he partially disabled.[2] Instead, appellants' position is that appellee is only entitled to an award under the schedule of specific losses.
The record reflects that appellee received emergency medical treatment from Dr. John E. Lemoine immediately following the accident. X-rays revealed that appellee had suffered fractures of the transverse processes of L-1-2-3 on the left[3] and a *582 fracture of the radial styloid portion of the radius[4] (right wrist) involving approximately one-third of the joint space in the accident. Dr. Lemoine applied a short-arm cast to appellee's right wrist and gave him medication for pain. Appellee remained under observation in the hospital for two days.
Mr. Lemoine referred appellee to Dr. Ray J. Beurlot, Jr., an orthopedic surgeon, for evaluation. Dr. Beurlot first examined appellee on April 3, 1979, approximately six weeks after the accident. Appellee complained of pain in his lower back, left hip, left leg, and right wrist. He told Dr. Beurlot that he was taking muscle relaxants and pain killers prescribed by Dr. Lemoine at the time and that these helped. Dr. Beurlot reviewed the x-rays taken of appellee shortly after the accident and his diagnosis was essentially the same as Dr. Lemoine's. He recommended that the cast be removed from appellee's right wrist and that appellee begin active motion of the joint. He also recommended a series of exercises for appellee's back. Dr. Beurlot noted that appellee might have some residual discomfort in his right wrist as the fracture extended into the joint.
Dr. Lemoine sent a report to Safeco on July 10, 1979, in which he stated that, "Patient should recover with no residual". Appellee had been put on a progressive exercise program and was encouraged to ambulate without limitation. The report did note that appellee continued to complain of back pain and that he had been hospitalized on May 20, 1979 for treatment with continuous pelvic traction and had shown moderate improvement. It was further noted that appellee was having no difficulty with his right wrist and that the fracture had healed well. Dr. Lemoine stated that he felt that appellee would be able to return to work within one to two months and that he encouraged appellee to work toward that end. Dr. Lemoine made another report on appellee's condition on October 5, 1979. He stated that appellee had been discharged on August 31, 1979, and that he felt that appellee had recovered sufficiently to return to work. Dr. Lemoine stated that appellee should make an effort to return to work.
Appellee's counsel later contacted Dr. Beurlot and asked him to examine appellee once again because he was still having trouble with his back and wrist. Dr. Beurlot examined appellee for the second time on November 6, 1979 with appellee complaining of pain in his right wrist and back. There was a slight restriction of movement in the wrist and back, but the fractures had healed well. X-rays revealed mild or early arthritic changes in the right wrist joint, which Dr. Beurlot testified resulted from injuries received in the accident. There was a decrease in sensation (to pin pick and light touch) over the web of the great toe of the left foot. Dr. Beurlot concluded that appellee's injuries were resolving themselves with some residual present. He felt that there would be continued improvement with a continuation of some pain in the right wrist on extreme motion and with heavy lifting or repetitive motion.
Dr. Beurlot next examined appellee, who was still complaining of pain in his right wrist and back, on July 1, 1980. There was still a slight restriction of motion in the right wrist, but there was no restriction of motion in the back. X-rays revealed no significant change in the arthritic condition of the right wrist. Sensation was normal in all areas examined, and there was no evidence of atrophy or weakness in any muscles examined. Dr. Beurlot assigned a 10% impairment to the right wrist and told appellee that if the pain became more severe a wrist fusion[5] could be performed to relieve it.
*583 Dr. Beurlot last examined appellee on September 4, 1980, and appellee related the same complaints made at the previous examination. Dr. Beurlot found that appellee's condition was essentially unchanged. Dr. Beurlot's opinion was that the injuries to appellee's right wrist had resulted in a permanent partial disability of that joint. He felt that appellee would suffer some discomfort in his wrist if he attempted to perform the tasks associated with the job he had held with appellant, Courtney Construction Company. Dr. Beurlot testified that appellee's complaints of pain in his right wrist were consistent with the injuries he had suffered. However, he noted that appellee's complaints of pain in his back were harder to evaluate, although it was possible that appellee could still be experiencing pain there. He stated that his testimony on the discomfort appellee might experience in performing the tasks associated with his job was based solely on the condition of appellee's right wrist. He felt that appellee's back should give him no more than occasional discomfort that could be relieved with a mild, non-narcotic, analgesic.
Appellee testified that he remained in bed for approximately three months after the accident. He then began to help his wife around the house and to do a little work in the yard. He stated that he continued to have trouble with his back and arm and was taking medication for pain about four times a day. Appellee went to work for one M.L. Weeks on March 1, 1980, at a pigskin processing plant and is presently working there.[6] Appellee was employed as a cook and testified that part of his duties included unloading sixty-pound boxes of pigskins from a truck and carrying them into the plant. He used his left (dominant) hand to balance the boxes on his right shoulder. Also, he was required to lift a basket weighing twenty-five to thirty pounds and to carry it within the plant once or twice a day. Appellee is left handed and used his left arm to do this.
Appellee was being paid the minimum wage when he began work at the plant. However, he received a raise two weeks before trial, which boosted his pay to $4.00 per hour. Appellee stated that he was continuing to experience pain in his right wrist and back at the time of trial and that he might have to quit his job because of this. Appellee testified that the only jobs he has ever held involved manual labor. He had completed the ninth grade in high school and was thirty-seven years old at the time of trial. Appellee admitted that he had been contacted by one of the job superintendents for Courtney Construction Company, who told him that his job was waiting for him whenever he felt that he could return.
A worker who cannot return to any gainful employment without suffering substantial pain is entitled to compensation benefits for total disability. Lattin v. HICA Corporation, 395 So.2d 690 (La.1981); Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La.1981); Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La.1980). However, substantial pain cases must also be analyzed within the framework of the Odd Lot Doctrine adopted by the Louisiana Supreme Court in Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). See Lattin v. HICA Corporation, supra; Wilson v. Ebasco Services, Inc., supra; Calogero v. City of New Orleans, 397 So.2d 1252 (La.1980); Dusang v. Henry C. Beck Builders, Inc., supra.
The Louisiana Supreme Court, in Lattin v. HICA Corporation, supra, stated that:
"Under the odd lot doctrine, a claimant is considered totally disabled if his injury makes him an odd lot in the labor market, that is, one capable of obtaining employment periodically but one whose services are so limited in quality, dependability or quantity that a reasonably stable market for his services does not exist. An odd lot *584 claimant need not be absolutely helpless to qualify for total disability. If the claimant can prove that his physical condition, mental capacity, education, training age or other factors combine to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd lot category. This satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The employer or insurer must then show that some form of gainful occupation is regularly and continuously available to the employee within reasonable proximity to the employee's residence."
"The odd lot doctrine is also applicable to substantial pain cases because a worker who, due to his injury, can function only with substantial pain or with the help of fellow workers may not be considered a particularly desirable employee. Thus, if a claimant's pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market, he can be treated as an odd lot worker and be awarded total disability, unless there is proof that jobs are realistically available to him. On the other hand, if a worker cannot perform the same work that he did before his injury because it causes him substantial pain, but he has the mental capacity to perform other jobs which are available, he should be considered partially disabled. Dusang v. Henry C. Beck Builders, Inc., supra."
Appellee described the duties associated with his work at the time of the accident. Courtney Construction Company is primarily engaged in the construction of highways. Appellee testified that he climbed down into trenches dug on the side of the highway to guide sections of pipe together when drainage pipes, etc. were being constructed. He also helped erect the forms into which concrete was poured to construct the roadway. The forms weighed approximately 90 pounds each and were handled by at least two, and sometimes three, employees. Once the concrete was poured, workers would get in it and use shovels to spread it around. The concrete was then allowed to dry and the forms were removed. Appellee testified that it was sometimes necessary to use a sledgehammer when putting the forms together or taking them apart. Appellee testified that he has made no attempt to perform any of these tasks since the accident because he is afraid that he will be unable to do them. Dr. Beurlot testified that appellee would probably experience some discomfort if he attempted to perform these tasks. However, he stated that this discomfort would be related to the wrist injury only. Dr. Beurlot testified with respect to appellee's back injury that:
"A. On his back it's not inconceivable that the man could have occasional discomfort in his back to the point where he may take a mild analgesic or non-narcotic medication from time to time but not to the point that his back in itself would render him incapacitated or disabled. Mostly it's his wrist that the primary opinions were based on."
The evidence shows that appellee has been working for at least nine months at a job that does involve manual labor, in spite of the pain he claims to be experiencing. The medical evidence shows that the fractures suffered by appellee in the accident had healed properly. Further, that while appellee fractured his right wrist, he is a left-handed individual. Dr. Lemoine felt that appellee had recovered sufficiently to return to work. Dr. Beurlot could find no residuals with respect to appellee's back injury and felt that the residuals in appellee's right wrist were not severe enough to warrant cortisone treatments or surgery. Appellee's pain at the time of trial was apparently being relieved by non-prescription pain killers.
A claimant will not be held to be disabled solely because he suffers some residual pain and discomfort when he attempts to work following a work-related accident. The residual pain or discomfort in such a circumstance will be considered *585 disabling only if it is substantial or appreciable pain. Hollis v. Travelers Insurance Company, 368 So.2d 154 (La.App. 3 Cir. 1978); Breaux v. Kaplan Rice Mill, Inc., 280 So.2d 923 (La.App. 3 Cir.1973). Whether a claimant's pain is substantial enough to be disabling is a question of fact that must be determined according to the circumstances of each individual case.
After carefully reviewing all of the evidence in the record, we conclude that the finding of the trial court that appellee's pain is substantial enough to render him totally and permanently disabled is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
The claimant has the burden of proving to a legal certainty and by a reasonable preponderance of the evidence that he is disabled. Guidry v. Ford, Bacon & Davis Construction Corp., 376 So.2d 352 (La. App. 3 Cir.1979); Soileau v. Bituminous Casualty Corporation, 348 So.2d 1313 (La. App. 3 Cir.1977); Hamilton v. Georgia Pacific Corp., 344 So.2d 400 (La.App. 1 Cir. 1977).
The issue of whether or not he has carried this burden must be determined by examining the totality of the evidence, including both lay and medical testimony. Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La.1977); Guidry v. Ford, Bacon & Davis Construction Corp., supra.
In order to be classified as partially disabled, appellee would have to prove that he cannot perform the same or similar work that he did before his injury because it causes him substantial pain. See Lattin v. HICA Corp., supra; Dusang v. Henry C. Beck Builders, Inc., supra. We have concluded that the trial court's finding that appellee was suffering from substantial pain is clearly wrong. We find that appellee has failed to prove that he cannot perform the same or similar work that he did before his injury because it causes him substantial pain and, therefore, he cannot be classified as being partially disabled.
We note that, even if appellee would have presented a prima facie case for his inclusion in the Odd Lot category, Courtney Construction Company has made a showing that there are jobs which are available to appellee. Wayne Gaspard, an accountant employed by Courtney, testified that appellee was considered to be a dependable and reliable employee. Carl Stephens, a job superintendent employed by Courtney, testified that he had authority to hire and fire workers. He first met appellee in 1973 when he hired him as a laborer. He explained that some of appellee's tasks required little or no motion in the wrist, i. e., driving a truck, operating a front-end loader, or flagging traffic. Stephens expressed his belief that with a little training, appellee would make a good foreman or supervisor as he had been used in a similar position in the past with good results. Stephens described appellee as one of his key men and stated that he would hire appellee "tomorrow" if appellee were willing to return to work. Stephens further stated that he would use appellee as a foreman, which would allow appellee to escape having to use his wrist as he would simply supervise other employees. He testified that approximately thirty percent of the employees working under him have some sort of disability that prevents them from doing certain tasks and he simply assigns those capable of performing a particular task to do it. He estimated that appellee would be paid somewhere between $6.75 and $7.00 per hour if he came back to work. Stephens testified that he had personally spoken to appellee several times since the accident in an attempt to get him to return to work. Appellee himself testified that he had left Courtney a number of times in the past to accept employment elsewhere, but that he was always hired back when he wanted to return to work for them.
This testimony by Stephens, when combined with the fact that appellee has been employed for the last nine months, clearly shows that there is some form of gainful occupation, regularly and continuously available to the appellee within reasonable proximity to his residence.
*586 In the present case, we find that the uncontradicted medical and lay testimony indicates a permanent residual impairment of wrist function (right wrist), which recurrently produces significant pain and soreness upon exertion, and which probably will do so for the remainder of appellee's life. The uncontradicted medical opinion of 10% permanent impairment or loss of function of the right wrist is based on these recurring episodes of pain, not substantial enough to be disabling (but significant enough to produce aching and soreness), as well as upon the slight restriction of motion of the joint.
This type of residual arising from permanent impairment of function entitles a claimant to compensation under LSA-R.S. 23:1221(4)(p)[7], in the schedule providing for compensation for specific losses which do not produce total or partial disability. LSA-R.S. 23:1221(4)(p) authorizes the court to allow reasonable compensation for a residual "where the usefulness of a physical function is seriously permanently impaired." Ventress v. Danel-Ryder, Inc., 225 So.2d 765 (La.App. 3 Cir. 1969). It is a limited award, however. Under this provision, the court may award a maximum of 100 weeks compensation, in either a percentage of up to 66 2/3% of the claimant's wages (not to exceed the statutory maximum weekly compensation, LSA-R.S. 23:1202), or else a fixed amount of between the statutory minimum and the statutory maximum compensation awardable under LSA-R.S. 23:1202.
Appellee was injured on February 21, 1979, and the average weekly wage, as determined by the Administrator of the Division of Employment Security, at the time was $210.88. Thus, under the circumstances of this case, the most appellee would be entitled to is $4,100.00, which is the statutory minimum.[8]

TERMINATION OF APPELLEE'S BENEFITS
The record shows that Safeco has paid appellee $12,126.00 in workmen's compensation benefits. This exceeds the amount which we have found appellee to be entitled to. We conclude that the record establishes that the trial court's finding that Safeco acted arbitrarily and capriciously in terminating payment of workmen's compensation benefits to appellee is clearly wrong. Arceneaux v. Domingue, supra; Canter v. Koehring Company, supra.
Thus, appellee is not entitled to the statutory penalty of 12% of the workmen's compensation benefits found to be due and owing or to an award for attorney's fees.
For the above and foregoing reasons, the judgment of the trial court is reversed.
All costs of this appeal, and in the trial court, are assessed against plaintiff-appellee.
REVERSED.
GUIDRY, Judge, concurring.
I agree with my brethren that the trial court clearly erred in finding plaintiff totally *587 and permanently disabled. I likewise agree that the record will not support a conclusion that plaintiff is partially disabled under LSA-R.S. 23:1221(3). Therefore, the "odd lot doctrine" is clearly inapplicable and no good purpose is served by a discussion thereof.
For these reasons I respectfully concur in the result.
NOTES
[1] LSA-R.S. 23:1221(2) provides, in pertinent part, as follows:

"(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability."
[2] LSA-R.S. 23:1221(3) provides, in pertinent part, as follows:

"(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience,"
[3] The traverse processes are projections of bones, approximately an inch to one and one-half inches in length, which protrude from the side of each vertebra. Their function is to act as attachment points or anchorage for certain muscles that run inside the body along the back wall. They are located away from the nerve structures usually associated with back problems.
[4] The radial styloid portion of the radius refers to the boney knot found on the arm bone at the base of the wrist.
[5] A wrist fusion consists of the inlaying or embedding of a piece of bone in one of the bones of the forearm and a specific bone of the hand thereby crossing the wrist joint. This restricts the motion of the wrist and relieves the pain caused by such motion.
[6] Trial was held on December 18, 1980, which meant that appellee had been steadily employed for almost nine months pre-trial.
[7] "(p) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-six and two-thirds per centum of wages during one hundred weeks."
[8] Assuming an award made on the basis of the maximum number of weeks under LSA-R.S. 23:1221(4)(p), the statutory minimum is computed in the following manner: $210.88 (the average weekly wage at the time of appellee's injury) times .20 (20% of that wage as provided for in LSA-R.S. 23:1202) times 100 (the maximum number of weeks of compensation under LSA-R.S. 23:1221(4)(p) equals $4,100.00.

The calculation based solely on LSA-R.S. 23:1221(4)(p), without taking into account the statutory minimum yields the following result: $210.88 (average weekly wage) times .666 (66.6% of that wage, the maximum as provided for in both LSA-R.S. 23:1202 and 1221(4)(p)) times 100 (the maximum number of weeks of compensation under LSA-R.S. 23:1221(4)(p)) times .10 (the 10% disability assigned to the wrist) equals $1,400.00 or less than the minimum benefit.