CARTER, Judge.
Plaintiff-appellant, Shirley R. Ginter, appeals the decision of the trial court in favor of defendants-appellees, Goudchaux’s, Inc. and Fireman’s Fund Insurance Company, holding that her recovery in this workers’ compensation suit was limited to the “scheduled loss” provided in LSA-R.S. 23:1221, with judgment in her favor being limited to her claim for unpaid medical benefits, amounting to the sum of $718.45.
Mrs. Ginter contests the denial of her basic claim that she is totally and permanently disabled, or her alternative claim of at least permanent partial disability.
In denying appellant’s claims, the trial judge in his written reasons for judgment *880 has fully and correctly answered the complaints the appellant made in this appeal. We have examined the entire record and conclude that the trial judge correctly decided the case and applied the applicable law to the facts presented. For the reasons expressed by the trial judge, which we adopt as our own, we affirm the judgment appealed.
As shown by his opinion, the trial judge discussed disability, and he correctly held that, if Mrs. Ginter was disabled, her disability was limited to the “scheduled loss” represented by the 35% disability to the foot assigned by Dr. Ray J. Haddad, Jr., the orthopedic surgeon who performed the surgical procedures on Mrs. Ginter. Plaintiff contends that this holding was in error and seeks to have this Court find her totally and permanently disabled, or at least permanently partially disabled. However, the record does not reveal that Mrs. Ginter produced sufficient evidence to carry her burden of proving any such disability. The cases of Hamilton v. Georgia Pacific Corp., 344 So.2d 400 (La.App. 1 Cir. 1977); and Robertson v. Valhi, Inc., 345 So.2d 149 (La. App. 1 Cir. 1977), hold that a workers’ compensation claimant must prove the existence and extent of his disability to a legal certainty by a reasonable preponderance of the evidence. In addition, the Hamilton and Robertson cases note that, on the determination of disability, great weight is to be given to the trial court’s factual findings. In the present case, the trial court had before it the reports of all of the physicians who had examined or treated Mrs. Ginter, the deposition of Dr. Haddad, and the testimony of Mrs. Ginter. Based upon the lower court’s decision, it was not persuaded of Mrs. Ginter’s complaints of pain and disability.
Furthermore, the reports from the physicians and Dr. Haddad’s deposition do not support her claims. The reports from Dr. J. B. Sullivan and Dr. Donald Ames (her physicians in Florida), show numerous visits with the absence of any objective findings, and also show that Mrs. Ginter followed a sometimes contradictory pattern of therapy and recovery. At times she failed or refused to wear the shoes and innersoles prescribed for her, and wore instead shoes which the doctors felt were “bad” for her. In addition, while complaining of “constant pain”, she stated that she could engage in such athletic activity as playing several holes of golf before she had pain. We find that the evidence relevant to the issue of disability shows no disability beyond the 35% loss of use of function assigned by Dr. Haddad.
As the trial court noted, compensation in excess of the amount due for a 35% disability to the foot had already been paid by the defendants. The amount due for that disability was computed in accordance with the formula set forth in Anderson v. Continental Can Company, 141 So.2d 48 (La.App. 2 Cir. 1962), cert. denied June 20, 1962; Bearb v. Boutte, 295 So.2d 533 (La.App. 3 Cir. 1974), writ refused, 299 So.2d 797 (La.1974), and came to $3,750.00. Compensation already paid totaled $6,871.00. The Anderson and Bearb cases, supra, also indicate that defendants are entitled to a dollar-for-dollar credit for all prior payments; hence, no further compensation is due to Mrs. Ginter.
As a further argument, Mrs. Ginter contends that she should be found to be disabled under the “odd-lot” doctrine, as set forth in Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). She contends that her pain makes her unable to return to work as a saleslady, and that defendants thus had the burden of proving that there was other work available to her.
 The record does not establish that her “pain” was such as to disable her. Moreover, in order for the “odd-lot” doctrine to be applicable, it was necessary that she prove more than the mere existence of some pain; the plaintiff was required to prove that her physical condition, mental capacity, education, training, and age, or other factors placed her at a substantial disadvantage in the competitive labor mar *881 ket. Lattin v. HIGA Corporation, 395 So.2d 690 (La.1981); Augustine v. Courtney Construction Company of Alexandria, Inc., 405 So.2d 579 (La.App. 3 Cir. 1981). No such evidence was offered by her to show that she was entitled to application of the “odd-lot” doctrine, thus the burden of proof was not shifted to the defendants to show that some form of gainful occupation was regularly and continuously available to her within reasonable proximity to her residence.
For the reasons assigned by the trial judge in his written reasons for judgment, a copy of which is attached hereto, marked “Appendix” and made part hereof, the judgment of the trial court is affirmed, at the appellant’s costs.
AFFIRMED.
APPENDIX

Shirley Ginter (plaintiff), while working at Goudchaux’s Department Store, slipped and caught her left foot in a door jam on or about May 3, 1977. She was initially seen by Dr. Charles S. Kennon, an orthopedic surgeon, with complaints of pain in the first, second and third metatarsal heads of her left foot. His reports (P-2), which were introduced in evidence, indicate that he treated her conservatively but after obtaining no significant relief felt she probably had a Morton neuroma between the second and third metatarsal heads, and in July of 1979, surgery was performed and the neuroma excised. Further complications ensued, and in September of 1977, Dr. Martin Bell, a plastic surgeon, operated and freshened the wound. Plaintiff then moved to Florida and was treated by Dr. J. B. Sullivan, an orthopedic surgeon in Fort Pearce, Florida. He began treating her on October 3, 1977, and saw plaintiff on several occasions through March 21, 1978. As the court appreciates Dr. Sullivan’s reports (D-3) introduced into evidence, plaintiff presented multiple complaints; however, he was never able to find any objective orthopedic pathology.
On April 17, 1978, plaintiff was seen by Dr. Ray J. Haddad, Jr., an orthopedic surgeon in New Orleans, and a member of the teaching faculty of the Tulane Medical School. Plaintiff was referred to Dr. Had-dad by Dr. Kennon for evaluation. Dr. Haddad was of the opinion that the type injury plaintiff sustained in her fall could result in a neuroma. He felt she still had a problem with a neuroma on the plantar surface of her left foot. He attempted conservative measures with an innersole but then her complaints worsened. In September of 1978, in view of plaintiff’s continued complaints, he performed surgery after telling plaintiff that he estimated no better than a 50-50 chance of improvement. He found an additional neuroma between the second and third metatarsal heads which was entwined by a great deal of scar tissue, all of which he excised. Her initial post-operative course was good and she returned home to Florida a few days later. On June 25, 1979, she returned to Dr. Haddad with the same complaints, and he performed sur *882 gery again and found a neuroma at the third and fourth metatarsal heads which he excised. Plaintiff continues to have problems because, as Dr. Haddad explained in his deposition, even after a nerve ending is excised the nerve continues to grow, and when it reaches a bone or scar tissue, it will become painful. He indicated that excisions of Morton neuromas are usually successful with classic results because there is no feeling left in the toe. He felt that while plaintiff was truthful in her complaints of pain, she had a very low pain threshhold. From an orthopedic point of view, he has nothing left to offer her because she has already had four operations. Continued operations only build more scar tissue around the nerve endings. He felt she needed to adjust the way she walked, be careful on the surfaces she walked upon, and wear well-made innersoles. He also felt she had to use her leg and walk as much as possible in order to keep her foot and leg muscles active. He found that the mechanics of her foot were working well and she had good circulation, but that she was possibly overreacting to her problem. Dr. Haddad was of the opinion that she should not work in an environment which required prolonged standing on a concrete or hard floor but felt she could pursue the sort of occupation which permitted her to sit down, slip her shoe off, rest her foot and put it down. In a response to a suggestion of phone sales or secretarial work, he answered, “yes.” He assigned a 35% disability of the foot, attributing that disability to scarring and the loss of sensation. Dr. Haddad referred plaintiff to Dr. Donald Ames, an orthopedic surgeon in Vero Beach Florida, for continued treatment after his last surgery. Dr. Ames saw her initially on January 15, 1979. On February 8, plaintiff indicated to Dr. Ames that she had obtained a pair of tennis shoes which made her foot better and that she could play five holes of golf before she had pain. On May 21,1979, Dr. Ames was of the opinion that plaintiff had reached maximum medical improvement and he had nothing further to offer surgically. He felt any disability she had was based upon subjective symptoms and that she could be gainfully employed in at least a sedentary capacity not requiring walking or standing.
It was stipulated that compensation was paid through June 8, 1979. The court feels this case falls under the temporary or partial disability provisions of R.S. 23:1221. A 35% disability was apportioned to plaintiff’s foot by Dr. Haddad. Under the schedule of payments provided in Section 1221, defendant has no further legal obligation to plaintiff for this partial disability.
On May 21, 1979, the date of Dr. Ames’ final report, there were outstanding medical bills. Under the provisions of R.S. 23:1203, the employer is obligated to furnish all necessary medical, surgical, hospital services and medicines, or any non-medical treatment recognized by the law of this State as legal. In addition, the employer is liable for actual expenses reasonably and necessarily incurred by an employee for mileage necessarily traveled in order to obtain services medicines and prosthetic devices. Accordingly, any unpaid medical expenses incurred through May 24, 1979, are due and owing: The court calculates these as follows:
Dr. Charles Kennon (P-12) 20.00
Wheel chair expenses (P-11) 157.26
University of Miami
Hospitals & Clinic (P-7) 44.00
Phone expenses to Drs.
Kennon, Haddad &
Ames (P-8) 57.24
Prescriptions by Dr.
Kennon or his partners, Dr. Haddad, and Dr.
Ames (P-6) 208.95
Air fare to New Orleans (P-14) 231.00
For these reasons, there is judgment for plaintiff for the unpaid medical benefits amounting to $718.45, and in all other respects, plaintiff’s suit is dismissed at defendant’s costs. The expert witness fee of Dr. Ray J. Haddad is fixed at $150.00.
Judgment is rendered and will be signed accordingly.
BATON ROUGE, LOUISIANA, this 20 day of July, 1981.
/s/ Melvin A. Shortess
JUDGE